SWANSON v. SLAGAL, ADMINISTRATRIX.

[No. 26,829. Filed June 8, 1937. Rehearing denied September 20, 1937.]

*Kain, Blane & Hollowell, Call & Call,* and *Charles B. Salyer,* for appellant.

*Arthur W. Parry* and *Pickens, Gause, Gilliom & Pickens,* for appellee.

TREANOR, J.—This was an action by the appellee, Leona Slagal, administratrix of the estate of Oscar Slagal, deceased, against the appellant to recover damages for the death of appellee's decedent.

The appellee's decedent and one Kaywood were driving and operating a truck from Chicago to Fort Wayne over State Road No. 30. Slagal and Kaywood alternated as drivers of the truck and at the time of the accident, and prior thereto, Kaywood was driving the truck and Slagal was sleeping.

Appellant was driving his car on State Road No. 30 from the east and as he was entering a bridge his car overturned on the bridge. A few minutes later the truck approached the bridge from the west and ran into the automobile which was upset on, and near the west end, of the bridge. Just before the truck entered the bridge the driver saw a Mr. Jarvis, a companion of the appellant, standing between the automobile and the approaching truck and waiving his arms. The truck knocked the automobile some distance, caught up with it, struck it again and passed around it and continued on through the bridge where the tractor and part of the semi-trailer went off the road and caught fire. After the fire was extinguished, Oscar Slagal, the appellee's decedent, was found dead in the truck.

The essential elements of the complaint are as follows:

"That, as the defendant approached, guided and controlled his said automobile in a careless, negligent and reckless manner, in that said defendant operated and drove his said automobile at a rate of speed greater than was reasonable or prudent, having regard to the width, location and condition of the highway at said point, the condition of the weather and darkness at said time, and in such manner as to endanger the life and limb and injure the property of other persons using said highway at said point at said time, to wit, in excess of fifty miles per hour, and in that said defendant did not then have his said automobile under reasonable control;

"And plaintiff further says that the said defendant, still continuing at said high, dangerous and reckless rate of speed, as aforesaid, and without having his machine under reasonable control, approached the point where said highway crossed said Deep River and so negligently, carelessly and recklessly propelled, operated, guided and controlled his said automobile that by reason of and through said carelessness, negligence, and recklessness of said defendant, the automobile driven by said defendant struck the said bridge over Deep River, or some part thereof, and was thereby damaged, wrecked and thrown and placed upon and across the said highway on said bridge, thereby blocking said highway so that vehicles approaching said bridge and crossing said bridge in an easterly direction could not pass the point where the defendant's said automobile lay on said bridge without striking it and the defendant then and there, well knowing that said highway was a hard surfaced road, carrying much traffic and greatly traveled, and that other motor vehicles were likely to be passing said point at any moment, nevertheless, carelessly, negligently and recklessly omitted to give or cause to be given any warning to approaching vehicles of the blockade of said highway and bridge as aforesaid, but carelessly and negligently permitted his said automobile to remain on said bridge at said point blocking said highway without any lights thereon and

·without giving any notice to other vehicles approaching said bridge."

The plaintiff's demurrer to defendant's amended plea in abatement was sustained by the trial court, and defendant's motion to make more specific and his demurrer to plaintiff's complaint were both overruled by the trial court. The case was tried before a court and jury and the jury returned a general verdict in favor of appellee in the sum of $10,000.00. Defendant's motion for judgment on the interrogatories and answers thereto, as well as his motion for a new trial, were overruled. Judgment was entered in favor of plaintiff below and against defendant in the sum of $10,000.00.

Under his "Propositions and Authorities" appellant urges as Proposition I that "The Allen Circuit Court erred in overruling appellant's motion for a new trial for the reason that the verdict is not sustained by sufficient evidence," and as Proposition II that "The Allen Circuit Court erred in overruling the appellant's motion for a new trial for the reason that the verdict of the jury is contrary to law." The same reasons and authorities are relied upon to support both propositions. The gist of appellant's argument seems to be as follows:

1. The cause of action, relied upon by plaintiff below, and as described by the allegations of the complaint consisted of two acts of negligence which are "alleged as dependent acts and in the conjunction."

2. It was necessary for plaintiff below to prove all the facts alleged as constituting the two dependent and conjunctive acts.

3. It was necessary to prove that all the dependent and conjunctive acts alleged were the proximate cause of the death of decedent.

4. Appellant contends that the evidence is not sufficient to establish either that the defendant committed the two dependent conjunctive acts of negligence or that the death of plaintiff's decedent

was the proximate result of the combined effect of the alleged acts of negligence.

The general rule is well settled that when a complaint in one paragraph properly charges two or more acts of negligence, proof of the occurrence of one of such acts will warrant a recovery if the evidence justifies the conclusion that such act was the proximate cause of the injury. If the acts which are pleaded in the complaint are so interdependent that the conduct complained of could not have constituted actionable negligence in the absence of anyone or more of the alleged acts, it is necessary for the plaintiff to establish the occurrence of all the acts and that the joint effect of the acts was to occasion the injury.[1] But the foregoing rule does not apply when "numerous negligent acts are alleged, anyone of which might have produced the injury complained of."[2]

The complaint alleges facts which are sufficient to charge that the defendant, by his negligent operation of his automobile, caused the same to be wrecked and thrown upon and across the highway on the bridge and thereby blocked the highway so that vehicles approaching and crossing the bridge in an easterly direction could not pass defendant's automobile without striking it; and that the defendant, with knowledge of the peril to vehicles, "carelessly, negligently and recklessly omitted to give or cause to be given any warning to approaching vehicles of the blockade of said highway and bridge as aforesaid, but carelessly and negligently permitted his said automobile to remain on said bridge at said point, blocking said highway, without any lights thereon, . . . and that by reason of and through

1. *Pittsburgh etc. R. Co.* v. *Broderick* (1914), 56 Ind. App. 58, 102 N. E. 887; *Southern Ind. etc. Co.* v. *Winstead* (1931), 92 Ind. App. 329, 333, 335, 175 N. E. 281.
2. *City of Newcastle* v. *Jackson-Smith Co.* (1928), 87 Ind. App. 418, 161 N. E. 692.

the said negligence, carelessness and recklessness of said defendant, as above alleged, the motor vehicle in which said Oscar Slagal was then and there riding, collided with the automobile of the defendant and was thrown upon and against a portion of said bridge." It is clear from the foreging that the complaint charges two acts of negligence and that the accident out of which the injury arose could have resulted from either without the existence of the other.

Consequently, if the evidence is sufficient to establish the existence of either one of the acts of negligence and of a causal connection between the act which is established and the injury complained of, the verdict of the jury was sustained by sufficient evidence and was not contrary to law.

Appellant insists that there was no evidence that he was operating his automobile at a high rate of speed or that high speed caused his autoomobile to strike the bridge. It is true that the defendant testified that he was driving his automobile at a speed of 30 to 35 miles per hour and that he slowed down to 20 or 25 miles per hour as he approached the bridge; and the defendant testified that his automobile skidded and struck the bridge and that the skid was caused by ice in the entrance to the bridge, "or by the driver being confused by another road leading off, or to both."

There were, however, circumstances from which the jury reasonably could have inferred that appellant was driving at a much greater speed than 30 to 35 miles an hour when he entered the bridge. Also, there was testimony which indicated that there was no ice at the entrance to the bridge. Appellant entered the bridge from the east and the evidence justified the jury's concluding that his automobile crashed into the iron railing or guard of the bridge at a point five or six feet from the east end. The bumper of his car was found in

the creek immediately below the point where the iron railing or guard was struck. The jury reasonably could have concluded that his automobile then rebounded across the bridge to the north side and struck the iron guard or rail on the north, or right, side of the bridge about 35 feet west of the point where it had collided with the iron railing on the south side of the bridge; and that the automobile was then upset and came to rest at a point 10 to 15 feet from the west end of the bridge and sixty to seventy feet from the point where it first collided with the bridge; and that when it finally stopped it was lying on its left side with the front pointing south and its wheels toward the west, blocking both traffic lanes on the bridge. The noise caused by the crashing of appellant's automobile in the bridge was heard by two men who were playing cards in a house 450 feet or more away from the bridge and these men testified that the windows and doors of the house were closed. The Mr. Jarvis who was with appellant at the time of the accident, testified that appellant's car skidded at a point about 12 feet "just before he hit the bridge," and that, as the car began to skid, he had his hand on the door handle and "went out". That he did not know whether he went out "voluntarily" or was "thrown out"; and that he thought that appellant "was going to hit something." Jarvis also testified that he had been a witness at the coroner's inquest and had there testified as follows: "As I was sitting there and I seen he was going to hit the bridge there, I opened the door and jumped out." According to the testimony of Jarvis he fell, or jumped, from appellant's automobile near the east entrance of the bridge and was rendered unconscious. At one point in his testimony he stated that when he regained consciousness he was lying near the center of the bridge; and at another point in his testimony he stated that he was lying about 15 feet west

of appellant's overturned automobile which, he stated, was near the center of the bridge. Jarvis also stated that he thought it would have been possible for him to have slid from a point 12 feet east of the bridge to the center of the bridge, a distance of approximately 50 feet. If the jury believed, as it reasonably could have believed, that the overturned automobile of appellant came to rest 15 or 20 feet from the west end of the bridge; and if the jury believed Jarvis' testimony to the effect that he was west of the overturned automobile when he regained consciousness, the jury necessarily had to conclude that the force of Jarvis' exit from the automobile of appellant was so great that he rolled or slid approximately the entire length of the bridge which was approximately 85 feet in length. At any rate the circumstances were such that we can not say that the jury was not justified in concluding that appellant's automobile was moving at a rate of speed far in excess of 20 to 25 miles an hour when it was approaching the east end of the bridge, and that appellant's negligent operation of his automobile caused the same to be wrecked and thrown across the highway on the bridge.

In respect to the charge that appellant did not use due care to warn approaching travelers on the highway, it is clear that if the jury had accepted at its face value the testimony of appellant and his companion Jarvis, it could not have concluded that there was a failure to use care. Appellant testified that he was imprisoned in his automobile at the time, and until after, the truck had collided with the appellant's automobile and had pushed it for some distance on the floor of the bridge. But there was testimony of witnesses who stated that shortly after the accident appellant had declared that he was not in his automobile when it was struck by the truck. Furthermore, the physical condition of appellant's automobile was such after the collision that the jury rea-

sonably could have doubted whether a person could have remained in it and survived; or, at least, could have escaped without serious and obvious injury. What evidence there was respecting appellant's physical condition immediately after the accident indicated that he was not seriously injured. In short, in view of all the circumstances, the jury reasonably could have concluded that appellant was not imprisoned in his automobile and that he was in a position to have given sufficient warning to the approaching truck at a time and place which would have enabled the driver of the truck to have stopped before entering the bridge and colliding with appellant's automobile.

Appellant insists that the alleged acts of negligence were not the proximate cause of the decedent's death, either independently or in conjunction. Assuming that appellant's car was wrecked and overturned on the bridge as a result of appellant's negligence, and that appellant negligently failed to give warning in time for the driver of the approaching truck to stop before colliding with the overturned automobile, it must follow that the negligent acts of the appellant were, in fact, causally connected with the death of Slagal. Under the test of foreseeability this factual causation is legal causation. The test of foreseeability is recognized by this court as indicated by the following excerpt:[3]

"Proximate cause is the act that immediately causes, or fails to prevent, an injury that might reasonably have been anticipated would result from the negligent act or omission charged, and without which such injury would not have occurred. The test is to be found in the probably injurious consequences that were to be anticipated, and not in the number of subsequent events or agencies that might arise to bring about such consequences."

Plaintiff's requested instruction number 16, which

---

3. *Balzer* v. *Waring* (1911), 176 Ind. 585, 593, 95 N. E. 257.

was given by the court, told the jury that any negligence on the part of the driver of the truck in which ██ plaintiff's decedent was riding could not be imputed to the decedent. Appellant insists that the giving of this instruction was error because the instruction "eliminated all consideration by the jury of the question of whether under the evidence the operation of the truck was the proximate cause"; and because it precluded the defendant from submitting to the jury, as a question of fact, whether the deceased and driver were on a joint enterprise. There was no evidence from which the jury could have inferred the existence of any relationship between the deceased and the driver of the truck except that of fellow servant. The trial court properly instructed the jury that the negligence of the driver, Kaywood, was not imputable to the deceased. Furthermore, the instruction does not eliminate consideration by the jury of the question of whether, under the evidence, the operation of the truck was the sole legal, or proximate, cause of the injury which resulted in the death of decedent. But the court properly instructed the jury that if both the negligence of defendant and the negligence of the driver proximately contributed to cause the death of plaintiff's decedent, the negligence on the part of Kaywood would not be a defense.

Also, the court instructed the jury that if it should find that the driver of the truck was an unskilled driver and that plaintiff's deceased, with knowledge of the driver's unskillfulness, had placed himself in care of the driver and had gone to sleep, such facts, along with other facts, were proper to consider in determining whether or not the decedent was chargeable with contributory negligence. This covered the only situation which might have been the basis of an inference of contributory negligence.

Under proposition 7 appellant insists that his interests were prejudiced by an instruction which told the jury in substance that it was for the jury to determine whether defendant's automobile skidded when it was about to enter the bridge, and that if they found it did skid "it is for you to determine in the light of all the attending circumstances whether or not that in itself was negligence." Appellant urges that the language of this instruction "applied the doctrine of *res ipsa loquitur* to a skid and told the jury that they could consider the fact of a skid as being negligence 'in itself'." No doubt it is true, as urged by appellant, that the fact that appellant's automobile skidded does not in and of itself either constitute or establish the fact of negligent operation of the car. We agree with the following excerpt from an opinion by the Supreme Court of Massachusetts:[4]

> "It follows that the mere skidding of the car was not an occurrence of such uncommon or unusual character that unexplained the jury could say it furnished evidence of the defendant's negligence."

The instruction in question told the jury that if it found that defendant's automobile did skid as it entered the bridge it was then a question for the jury to determine "in the light of all the attending circumstances, whether or not that in itself was negligence, or the result thereof, on the part of the defendant Swanson in the operation of his automobile." We do not think that the jury could have understood from the instruction that it could find that the defendant negligently operated his automobile by merely finding, as a fact, that the automobile skidded. The jury must have understood from the court's instructions that they were not to consider skidding of the automobile as an ab-

4. *Williams* v. *Holbrook* (1913), 216 Mass. 239, 103 N. E. 633, 634.

straction apart from the operation of the automobile by the defendant, and that the fact of skidding is of itself neither negligence nor evidence of negligence, but may be either the result of, or an incident of, the negligent operation of an automobile. And we do not think that the court's refusal to give appellant's tendered instructions on the subject of skidding prejudiced his cause.

Appellant urges his cause was prejudiced by the giving of plaintiff's requested instructions numbers 3 and 8 and the court's instruction number 11. We think the jury must have understood from these instructions that the complaint charged (1) that the defendant failed to use due care in the operation of his automobile and that as a result of this failure to use due care the automobile was wrecked and thrown upon the bridge; and (2) that after the defendant's automobile was wrecked the defendant, with knowledge of the hazard thus created, failed to use due care in giving warning to the driver of the approaching truck in which Slagal was riding; and (3) that as a result of the foregoing acts of negligence the collision occurred and caused the death of Slagal. Also the jury must have understood that it was not necessary for the plaintiff to establish the existence of both of the alleged acts of negligence; but that it would be sufficient to establish the existence of either one of the two alleged acts of negligence, provided the evidence also established the existence of a casual relation between the act of negligence which should be established by the evidence and the death of Slagal. In view of what we have already said in regard to the independent character of the alleged acts of negligence the foregoing instructions were correct.

Appellant attaches much significance to the conduct of Kaywood who was the driver of the truck in which

Slagal was riding, and insists that the failure of the driver to discover the wrecked automobile in time to avoid colliding with it, if such failure was the result of the lack of due care, and also his failure to extricate Slagal from the cabin of the truck, if by exercise of reasonable diligence he could have extricated him, constitute independent intervening agencies which the jury, if properly instructed, might have found to be the proximate cause, or causes, of Slagal's death.

The jury instructed that if it found that both the defendant Swanson and Kaywood, the driver of the truck in which the deceased was riding, were guilty of negligence and that the negligence of Swanson and Kaywood "both concurrently and proximately contributed to cause the death of plaintiff's decedent, such negligence on the part of said Kaywood, if you find that there was any such negligence on his part, would not be a defense to the plaintiff's action herein." But the court also instructed the jury its verdict should be for the defendant if the jury should find that "the plaintiff's decedent, Oscar Slagal, sustained injuries that resulted in his death solely on account of the negligence of Ray Kaywood, driver of the motor truck in which said Slagal was riding. . ." And the court instructed the jury that the verdict should be for the defendant if the jury should find that Slagal was burned to death, and if the jury should further find that Kaywood, the driver of the truck, had failed to use reasonable care to cause Slagal to be extricated from the truck cab, if the defendant and such other persons as were present could have at that time removed Slagal from the truck and thereby prevented any injury to or the death of Slagal.

The foregoing instructions amply protected the interests of the defendant in so far as his interests could be legally affected by the conduct of the driver of the truck. Since as a matter of law the negligence, if any, of Kay-

wood, the driver of the truck, could not be imputed to the deceased, it follows the conduct of Kaywood could not relieve defendant of liability unless such conduct of Kaywood insulated the consequences of the wrongful conduct of the defendant so completely that the latter did not contribute appreciably to the injury of the deceased.

In the case of *Citizens Telephone and Telegraph Co.* v. *Prickett*,[5] the defendants, a contractor and subcontractor, had negligently cut and weakened a telephone pole at a point slightly below the surface of the street. The telephone company, with knowledge of the weakened and defective condition of the pole, permitted one of its employees to climb the pole and while he was working the pole fell and the workman was injured. The defendant contended that, inasmuch as the telephone company had notice of the condition of the pole and in violation of its duty to its employees, had failed to warn of the danger, such negligence on the part of the telephone company was the legal cause of the injury and that the defendant's negligence was thereby rendered remote and of no legal consequence. This court assumed that the telephone company did owe a duty to the employee to warn him of the negligent acts of the defendant contractors and that its failure so to do was negligence, in that it permitted the employee to meet, unknown to him, a latent danger which did not usually pertain to the charcater of the work he was employed to perform. But the opinion aptly comments as follows pp. 155, 156: "The failure to warn affected only the liability of all of the appellants and in no way changed the result of the original acts of negligence. Had the warning been given, it would not have changed the dangerous condition, but such condition would still have existed, and appellee might have been injured in exactly

5.   (1919), 189 Ind. 141, 125 N. E. 193.

the manner that this injury did occur. But in that case none of the appellants would have been liable, for the reason that appellee would then have been guilty of contributory negligence."

In the course of its discussion as to what constitutes an independent intervening agency this court quoted as follows from the case of *Union Pacific R. Co.* v. *Callagham*:[6] " 'The independent intervening cause that will prevent a recovery on account of the act or omission of a wrongdoer must be a cause which interrupts the natural sequence of events turns aside their course, prevents the natural and probable result of the original act or omission, and produces a different result that could not have been reasonably anticipated. The concurrent or succeeding negligence of a fellow servant or a third person which does not break the sequence of events is not such a cause, and constitutes no defense for the original wrongdoer, although in the absence of the concurrent or succeeding negligence, the accident would not have happened." This court summed up its own conclusion as follows: "An independent intervening agency which will protect the original wrongdoer must be the efficient cause of the injury of which complaint is made, and not a negligent act or omission of such agency concurring with or succeeding the original negligence permitted by the original wrongdoer to continue and which in the natural course of events results in such injury. In short, the result prevented by the intervening agency, must be the injury complained of, and not the requital for the injury."

In *City of Indianapolis* v. *Willis*[7] a taxi cab in which the plaintiff's decedent was a passenger, had been driven into a canal and the City of Indianapolis was sued on the ground that the city was guilty of negligence

6. (1893), 56 Fed. 988, 6 C. C. A. 205.
7. (1935), 208 Ind. 607, 194 N. E. 343.

by reason of its failure to erect proper signals or guards at the point where the street, upon which the taxicab was traveling, intersected the canal. It was urged by the city of Indianapolis that under the evidence the negligence of the city was only a remote cause, or a condition, and that decedent's death would not have resulted therefrom if another cause had not intervened, namely the negligence of the taxicab driver, Harry Carr. It was stated in the opinion that "if it should be determined, however, that Carr was himself guilty of negligence in the operation of the taxicab, it does not necessarily follow that his negligence would defeat the recovery in this case." The opinion relied upon and quoted from Indiana cases, including the case of *Evansville, etc., R. Co.* v. *Allen*,[8] from which the following excerpt is quoted (p. 640) : " 'Negligence may, however, be the proximate cause of an injury of which it is not the sole or immediate cause. If the defendant's negligence occurred with some other event, other than the plaintiff's fault, to produce the plaintiff's injury, so that it clearly appears that but for such negligence the injury would not have happened, and both circumstances are closely connected with the injury in the order of events, the defendant is responsible, even though his negligent act was not the nearest cause in the order of time.' "

As stated above this court has utilized as a practical rule of legal cause the test of foreseeability. The result of the holding in the foreging cases is that if the wrongful act of the defendant is a substantial factor in producing the injury complained of, and if the particular injury suffered by the plaintiff is one of a class which was reasonably foreseeable at the time of the defendant's misconduct, then there is a causal relation in fact as well as a legal cause. It is the function of the jury to determine whether the defendant's act

8.  (1905), 34 Ind. App. 636, 73 N. E. 630.

is a substantial factor in producing the injury of the plaintiff and whether such injury was reasonably foreseeable at the time of the defendant's misconduct. It is for the court to determine whether the plaintiff's interest which has suffered is protected by law and whether the interest is protected against the "particular hazard encountered."[9]

Under his proposition 13 appellant insists that the trial court erred in overruling defendant's motion to strike from the record all of the testimony of the witness Richard Hoffman concerning a bottle of whiskey which was found 40 or 50 feet north of the bridge. The court ordered stricken out all of such testimony which was properly objected to, and by a statement to the jury withdrew from their consideration all the testimony which possibly could have prejudiced appellant's cause. It was not error to overrule defendant's motion to withdraw the submission of the cause on account of misconduct of plaintiff's counsel in bringing before the jury any reference to the bottle of liquor alleged to be found by the witness Hoffman.

Under proposition 15 appellant presents as error the trial court's refusal to allow the appellant to testify regarding an experiment made by him with a car three weeks after the accident for the purpose of determining how far west of the bridge he could see the bridge with his automobile lights burning. The offer to prove did not disclose any testimony as to the result of the experiment which we can say would have been of any material assistance to the jury in determining the issue of fact.

We fail to find any ground for appellant's contention that his cause was prejudiced by the preliminary ques-

---

9. Green, Rationale of Proximate Cause, p. 2. For full discussion see Chapters I and IV of Green, and Harper, Law of Torts, Ch. 8, pp. 251-287.

tions and answers on cross examination with one of appellant's witnesses as urged by appellant under proposition 16.

Appellant also relied upon the alleged errors of the trial court in overruling his motion to make more specific and in overruling his demurrer to the complaint. It is the rule in Indiana that a general averment of negligent conduct on the part of defendant is sufficient to charge the defendant with negligence as against a demurrer. Such an averment is obviously no more than a declaration by the plaintiff that he does in fact have a cause of action against the defendant and does not in any true sense state the facts constituting his cause of action as required under the code. But such an averment is good as against a demurrer only by virtue of our statutory provision that recitals and conclusions shall be treated as an allegation of the facts so recited and of the facts necessary to sustain such conclusions, so far as they are "necessary to the sufficiency of such pleading."[10] If, however, a motion to make more specific has been overruled, no facts not alleged in the complaint will be implied by reason of the allegations of conclusions which have been unsuccessfully challenged by the motion to make more specific.[11] But in the instant case we think a motion to make more specific was properly overruled for the reason that the complaint contains sufficient allegations of facts to support the general recitals of negligence on the part of defendant. The following statement by this court in *Pittsburgh etc. R. Co.* v. *Simons*[12] (p. 339) is pertinent: "It has often been held by this court that a general charge of negligence is sufficient as against a demurrer, but if a

10. *Terre Haute, Indianapolis and Eastern Traction Co.* v. *Phillips* (1921), 191 Ind. 374, 132 N. E. 740.
11. *Terre Haute etc. Traction Co.* v. *Scott* (1926), 197 Ind. 587, 150 N. E. 777, 779; *Pennsylvaia Railroad Co.* v. *Hemmer, Admx.* (1933), 206 Ind. 311, 186 N. E. 283.
12. (1906), 168 Ind. 333, 79 N. E. 911.

defendant desires a more specific charge he is entitled to it upon motion, if made in due season. But the rule has its limitations. A plaintiff is required to charge his cause of action in direct and certain terms, yet he is not required to go into an elaboration of details beyond what is reasonably necessary fully and distinctly to inform the defendant of what he is called upon to meet. *Alleman* v. *Wheeler* (1885), 101 Ind. 141."

In the complaint in the instant case there were allegations to the effect that the defendant was driving at a rate of speed in excess of 50 miles per hour as he approached the bridge over Deep River; that he guided and controlled his automobile in a careless and reckless manner in that the defendant drove the automobile at a rate of speed greater than was reasonable or prudent, having regard to the width, location and condition of the highway at said point, the condition of the weather and darkness at said time, and in such manner as to endanger the life and limb and injure the property of other persons using the highway at said point; and that said defendant did not then have his automobile under reasonable control. The complaint also contained allegations that after the automobile of the defendant had been wrecked upon the bridge as a result of the negligence of the defendant, the defendant, knowing that the highway was a hard surfaced road, carrying much traffic and greatly traveled, and that other motor vehicles were likely to be passing at that point at any time, nevertheless negligently omitted to give or cause to be given any warning to approaching vehicles of the blockade of said highway and bridge, permitted his wrecked automobile to remain on the bridge blocking the highway and without any lights thereon. We think there were sufficient facts alleged to support the general allegation of negligent operation of defendant's automobile and of negligence in failing to use rea-

sonable care to warn drivers of motor vehicles which the defendant must reasonably be charged with knowing would be approaching the bridge from the west.

The additional hazard to which drivers and passengers of motor vehicles are subjected by the negligent operation of an automobile includes not only the danger of direct collision with the negligently operated automobile, but also includes the danger of collision with a wrecked automobile which has been wrecked as a result of its negligent operation. And one who is negligently operating his automobile upon a traveled highway must anticipate as one of the probable consequences of his conduct the wrecking of his automobile upon the traveled highway with the inevitable risk of a collision with approaching vehicles. The facts alleged in the complaint in the instant case established a duty upon the defendant to use due care to protect the deceased from the hazard of the collision which did in fact occur. The facts alleged also showed that the negligent operation of the car and the negligent failure to give warning each contributed to the injury of the deceased. Consequently, the complaint was good as against a demurrer.

During the *voir dire* examination of the jury attorney for the plaintiff asked a prospective juror whether the juror held any stock in any insurance company which had as its business the issuing of policies to owners of automobiles to protect them from claims for damages arising out of accidents. Attorney for the defendant objected to the question for the reason, among others, that the question did not relate to any specific insurance company. Attorney for plaintiff remarked that he would be glad to name the insurance company "if you gentlemen insist." At that point the defendant moved that the case be taken from the jury "because of a statement made by Mr. Perry to naming the company." The court overruled the objection to the

question and also overruled the motion to withdraw the submission. The court then admonished the jury to disregard the statement of counsel. The question was proper and in view of the admonition of the court it is impossible to see any abuse of discretion of the trial court in overruling the motion to withdraw submission.

One of plaintiff's witnesses, on direct examination, testified that he was employed by one A. H. Brown, an attorney, as an investigator. The witness was being used as an impeaching witness and upon cross-examination the witness testified that the Mr. Brown had a law office in Chicago and that he, the witness, was in the employment of Mr. Brown. In answer to the question "Whom do your pay checks come from?" the witness answered "An insurance company." The defendant moved to strike out the answer and to withdraw the submission to the jury, both of which motions were overruled by the trial court and appellant urges that this was reversible error. The purpose of the witness's testimony was to impeach the testimony of one of plaintiff's witnesses. On cross-examination the witness testified that he was not a lawyer and reiterated that he was employed by Mr. Brown who had "a law office of his own." The plaintiff was entitled to have the jury informed as to any facts which would affect the credibility of the witness's testimony; and one important fact would be the existence of any special interest in the case. If the attorney for the plaintiff suspected that the witness had not truthfully testified when he said he was being employed by a Mr. Brown, it was perfectly proper to ask a question which would show that he was not actually employed by Mr. Brown. The question respecting the source of his pay checks was proper cross-examination and was calculated to elicit material information; and the fact that he testified that he was receiving his checks from an insurance company, rather than from

the Mr. Brown, did not invalidate his answer. The defendant cannot object to a truthful answer to a proper question even though the answer informs the jury of a fact which the defendant did not want disclosed.

The trial court refused to permit Kaywood, the driver of the truck in which Slagal was riding at the time of the accident, to answer certain questions propounded to him by the defendant on cross-examination. These questions called for testimony which would have been relevant to the question of contributory negligence or imputed negligence, and, therefore, a part of the defendant's affirmative defense. No harm was done to defendant in excluding the proffered testimony since it was all available to him as a part of his defense in chief.

During the cross-examination of defendant Swanson the following remark was made by the trial judge in the presence and hearing of the jury: "If you haven't told him how to answer these questions I will give you five minutes recess to take him out and tell him how to testify." Appellant urges that the foregoing remark of the trial court was prejudicial, constituted reversible error, and that the trial court further erred in overruling the defendant's motion to withdraw submission. After overruling the defendant's motion to withdraw submission the trial court explained his remarks in a statement to the jury which was in part as follows: "This court wants to be fair and wants to be fair with this witness upon the witness stand, and wants to instruct this jury now that this Court has no inference and leaves no inferences that this witness has been instructed how to testify or what to say, but that this Court only meant that counsel should instruct this witness as to what his conduct should be on the witness stand, and in that gentlemen, this Court wants this jury, and now admonishes this jury, to attach no

significance in so far as merits of this case are concerned to the statement of the court. The court referred purely to the procedure and to the conduct of the witness and not to what the witness was testifying to, and certainly not to any instructions which counsel had given the witness with reference to his testimony. With that explanation and admonition gentlemen, let us proceed."

If the jury misunderstood the trial court's remark it is obvious that the admonition by the court is sufficient to remove any such misunderstanding and to prevent any possible prejudice to the defendant as a result of the statement.

The trial court refused to give to the jury instruction number 31 which was tendered by the defendant. The substance of the requested instruction was that if the jury found that there was any understanding or agreement, either express or implied, between Kaywood and Slagal, that while one of them was resting the other would operate the truck, any negligence by Kaywood in operating the truck which contributed to the injury of Slagal should be imputed to Slagal. It was not error to refuse the instruction for the reason that even if there was such an agreement negligence on the part of either while driving would not have been imputed to the other.

Appellant urges as a further ground for a new trial that the damages assessed by the jury are excessive. At the time of his death the deceased was a young man 21 years of age with a life expectancy of 41.53 years, and his widow, the appellee, was 22 years of age. The deceased was a good worker, physically strong and in good health at the time of his death. He was employed as a helper of Kaywood as a driver of a truck which was transporting merchandise between Chicago and Fort Wayne. He received $11.00 a trip and, if business required it, would make three trips a

week.  The deceased had been in the employment of the Wade Motor Company from December 12, 1931, to March 15, 1932, and during that period had earned $215.00 or approximately $71.00 a month.  In estimating the financial loss to appellee by reason of the death of her husband it was proper for the jury to take into consideration the temporary loss of earning power of the deceased due to unusual business conditions, and to make allowance for the probability of increased earning power when conditions should become more nearly normal.  The jury awarded $10,000 damages and "We cannot say that the damages awarded were so grossly excessive, or so out of line with reason and justice, as to shock the conscience, and indicate the belief that the jury acted from any improper motive."[13]

For the reasons heretofore stated we find no reversible error in the trial of this cause, and we conclude that the judgment of the trial court should be affirmed.

Judgment of the Allen Circuit Court is in all respects affirmed.

13. *Kenwood Tire Co.* v. *Speckman* (1931), 92 Ind. App. 419, 176 N. E. 29.