Pamela COLAW, Administratrix of the Estate of William R. Colaw, Deceased, Plaintiff-Appellant,

v.

Jeannia L. NICHOLSON, Defendant-Appellee.

No. 1–482A97.

Court of Appeals of Indiana, First District.

June 28, 1983.

David V. Scott, Rebecca G. Looney, Scott & Looney, New Albany, David W. Paugh,

Montgomery, Elsner & Pardieck, Seymour, for plaintiff-appellant.

Trent Thompson, Mead, Mead & Thompson, Salem, for defendant-appellee.

NEAL, Judge.

## STATEMENT OF THE CASE

Plaintiff-appellant Pamela Colaw, Administratrix of the Estate of William R. Colaw, Deceased, appeals an adverse jury verdict in the Jackson Circuit Court in her suit for the wrongful death of her husband decedent against defendant-appellee Jeannia L. Nicholson.

We reverse.

## STATEMENT OF THE FACTS

At 11:00 p.m. on January 13, 1979, the decedent Colaw was a passenger in a vehicle driven by Carl Stewart on Highway 60, a two-lane state highway. The Stewart vehicle was traveling west toward Salem when it met a vehicle traveling east driven by Jackson Warren. Upon approach, the Stewart vehicle swerved back and forth across the center line before a head-on collision occurred between the cars in the eastbound lane. The Warren vehicle came to rest in the eastbound lane and the Stewart vehicle came to rest in the westbound lane, separated by some distance. Stewart and Colaw had been thrown from their vehicle by the impact and Stewart's body was lying across the eastbound lane and Colaw's body was lying across the westbound lane. Both bodies were between the wrecked vehicles about 25 feet apart.

Shortly thereafter, perhaps no more than two or three minutes later, Nicholson, traveling in the eastbound lane towards the scene, saw Jackson Warren walking in the middle of the road. Nicholson swerved into the westbound lane to miss Warren and ran over Colaw. Colaw was taken to the Clark County Hospital still alive, but expired shortly thereafter. The cause of death was multiple injuries and shock. A pathologist, Dr. Frances Masser, testified that the injuries were crush injuries. She found a num-

ber of skeletal fractures consisting of rib and pelvic fractures, a broken left humerous, a broken nose, and a dislocated left shoulder; and internal injuries consisting of lacerations of the liver and kidneys, and multiple lung injuries. Dr. Masser further testified that the chest injuries probably resulted from the first collision and being thrown from the car; whereas, the pelvic injuries resulted from being run over. This latter opinion was attributed to the presence of tire tracks across the decedent's body. The doctor testified that the injury received in the second impact contributed to Colaw's death, and reduced his likelihood of survival. The doctor could not say with any reasonable degree of medical certainty that the injuries sustained by Colaw as a result of being run over were the cause of death, and that the injuries caused when Colaw was thrown from the car were not the cause of death. Rather, Dr. Masser was of the opinion that being run over had contributed to Colaw's death; that the pelvic fractures by themselves would not have been fatal.

The trial court, over objection, permitted evidence which showed Colaw's blood alcohol content to be .25, and Stewart's to be .165, both well over the level of prima facie intoxication. There was also evidence that after being run over by Nicholson's vehicle, Colaw could only groan and move his hand.

Colaw's complaint proceeded on the theory that Nicholson was negligent in failing to exercise reasonable care in driving into what she knew or should have known was the scene of an automobile wreck. Nicholson filed an answer in denial, and in the pretrial entry added the affirmative defense of contributory negligence.

## ISSUES

I. Whether the trial court erred in overruling plaintiff's motion in limine and in permitting the introduction, over plaintiff's counsel's objection, of evidence concerning blood-alcohol level; concerning how much alcohol a person weighing 220 to 230 lbs. with a blood-alcohol level of .25% might have consumed; and further concerning the effect of a .25% blood-alcohol level on a person's reactions and mobility, for the reasons that these matters were irrelevant to the issues presented.

II. Whether the trial court erred in permitting a police officer to testify as an expert on interpreting blood alcohol content.

III. Whether the trial court erred in giving, over plaintiff's counsel's objection, defendant's Instruction No. 2 on the issue of intoxication.

IV. Whether the trial court erred in giving, over plaintiff's counsel's objection, defendant's Instruction No. 4 on the issue of incurred risk.

V. Whether the trial court erred in giving over plaintiff's counsel's objection, defendant's Instruction No. 1 on the issue of sudden emergency.

VI. Whether the trial court erred in giving, over plaintiff's counsel's objection, defendant's Instruction No. 6 dealing with the requirement that medical testimony be based on a reasonable degree of medical certainty.

## DISCUSSION AND DECISION

*Issue I. Intoxication*

Since we reverse we will discuss only Issues 1, 3, 4 and 6. Issues 1, 3 and 4 concern intoxication and we will discuss them together. Though we find no error here, we discuss these issues to provide guidance for the trial court in the retrial. The trial court, over objection, admitted evidence of Colaw's intoxication of .25 and Stewart's intoxication of .165. Colaw's objection was based on relevancy, in that as a result of the first collision Colaw was left lying helpless in the highway and was no different than any sober person who was injured and helpless. Further, Stewart's intoxication cannot be imputed to Colaw. Nicholson argues that the evidence indicates that although Colaw had received

what ultimately proved to be fatal injuries as a result of his being thrown from his vehicle into the highway pavement, he was conscious even after being run over by the Nicholson vehicle and actually grabbed at a person's pants leg. Nicholson contends that Colaw's extremely high level of intoxication contributed to his inability to extricate himself from the highway after having been thrown from the vehicle. To provide background for this discussion, some generalizations are in order.

■ Absent agency, joint venture, right of control, or some recognized unity of interest, the negligence of the operator of a motor vehicle is not imputed to his passenger. *Dominguez v. Gallmeyer,* (1980) Ind. App., 402 N.E.2d 1295; *Leuck v. Goetz,* (1972) 151 Ind.App. 528, 280 N.E.2d 847; *Baltimore & Ohio Railroad Co. v. Patrick,* (1960) 131 Ind.App. 105, 166 N.E.2d 654. Here there was no evidence which would suggest imputed negligence.

■ A passenger in an automobile is bound to use the reasonable and ordinary care of a prudent person under the circumstances to avoid injury to himself. *Tuttle v. Reid,* (1966) 247 Ind. 375, 216 N.E.2d 34; *Le Clerc v. Dover,* (1975) 163 Ind.App. 87, 322 N.E.2d 101. For intoxication to be actionable in negligence it must have been the proximate cause of the injury. *Buddenberg v. Morgan,* (1941) 110 Ind.App. 609, 38 N.E.2d 287. Intoxication of a passenger is no excuse for failure to exercise that degree of care for his own safety that a reasonable, prudent man would have exercised under the same or like circumstances. He is held to use the same degree of care as a sober person. However, the intoxication of a passenger does not in and of itself constitute contributory negligence which will preclude recovery for injuries sustained unless such condition was a proximate cause of the accident. Blashfield Automobile Law and Practice, Vol. 5, § 215.22.

Colaw seems to argue that any prior negligence of Stewart or contributory negligence of decedent terminated with the first collision and, therefore, the evidence of intoxication was irrelevant for the purpose of

the second impact. We characterize this argument as an assertion that the second collision was an intervening and superseding force; that the first wreck was a mere condition, and the prior negligence would not defeat recovery. Colaw does not flesh out this argument.

The problem was stated in 7A Am.Jur.2d *Automobiles* § 436, as follows:

"In a situation where one defendant was charged with negligence causing collision or other accident, leaving one or more vehicles standing on the highway, and a subsequently approaching vehicle collided with one or both of those involved in the original collision, it has frequently been held, under a variety of evidence as to the physical circumstances and time intervals involved, that the original negligence could be found to continue as a proximate cause of the injury or damage caused by the second. Some cases holding that negligence causing one accident could properly be found a proximate cause of injury immediately caused by a second accident involving a subsequently approaching vehicle have concerned a situation where the injured person was standing or lying in or near the road as a result of the first accident.

In a number of other cases the courts have indicated that negligence causing one accident could not be found to have continued as an effective legal cause of injuries received when a subsequently approaching vehicle collided with a vehicle in or near the road as a result of the first accident. Similarly, other cases have held that negligence causing one motor vehicle accident could not be regarded as a proximate cause of injury to one standing or walking and lying in or near the road when struck by a subsequently approaching vehicle." (Footnotes omitted.)

*See also* 58 A.L.R.2d 270 *et seq.*

Indiana's approach to the problem has been seemingly inconsistent. In *Swanson v. Slagal, Administratrix,* (1937) 212 Ind. 394, 8 N.E.2d 993, the cause of action was predicated upon (1) negligence of defendant in causing a wreck of his motor vehicle on a

bridge, and (2) failing to give proper warning of the wreck to oncoming motorists. The Court stated that if the wrongful act of the defendant was a substantial factor in producing the injury, and if the injury was reasonably foreseeable at the time of the defendant's misconduct, then a causal relation would exist. Whether this was so, was a jury question. The Court affirmed recovery in the plaintiff's wrongful death action and held that both negligent acts were causally connected to the death of plaintiff's decedent when he ran into the wreck.

In *Hedgecock v. Orlosky,* (1942) 220 Ind. 390, 44 N.E.2d 93, the defendant negligently came to a sudden stop, and was struck from behind by the plaintiff. Minutes later, while plaintiff was between the cars attempting to disengage the bumpers, a third car struck the rear end of plaintiff's car injuring him. The Supreme Court stated:

"The facts recited above constitute evidence of negligence on the part of the appellant.... *Lorber v. Peoples Motor Coach Co.* [1929], 89 Ind.App. 139, 164 N.E. 859, 172 N.E. 526.

The appellant contends that the act of the appellee in going between the cars constituted an independent, responsible, human agency which broke the chain of causation between the appellant's negligence and the appellee's injury, while the appellee asserts that the appellant's negligence was a substantial factor in producing an injury which was of a class reasonably foreseeable by the appellant. Both parties rely upon principles that are well recognized in the law of negligence. No good purpose would be served by restating these rules. The difficulty is in their application to the facts of the case.

It seems to be recognized that the human impulse of an owner to save his property is such that a prudent effort to accomplish that end is reasonably to be expected by one whose negligence places such property in a situation of peril. 38 Am.Jur., *Negligence* § 81, p. 739. 64 A.L.R. 515. So, in the case at bar, we believe that when the appellant negligently caused the appellee's automobile

to be interlocked with hers on a heavily traveled thoroughfare she was chargeable with knowledge that the appellee might be expected to take reasonable steps to disengage the vehicles and remove his automobile to a place of comparative safety."

220 Ind. at 394–5, 44 N.E.2d 93. Recovery was denied only because the court found that the plaintiff himself was contributorily negligent in getting between the cars to disengage the bumpers. We read *Hedgecock* as holding that the first accident was a continuing foreseeable legal cause, defeated only by the plaintiff's later contributory negligence.

Nevertheless in *Slinkard v. Babb,* (1953) 125 Ind.App. 76, 112 N.E.2d 876, the trial court granted a directed verdict on the following facts:

1. Slinkard, the plaintiff, was operating his vehicle on an icy highway at night and was crossing the Evansville-Henderson bridge over the Ohio River.

2. The highway was icy in spots and the surface of the bridge was solid ice.

3. Babb, the defendant, was following Slinkard.

4. One-fourth (¼th) of the way across the bridge, Babb ran into the rear of the Slinkard car.

5. The Babb car and the Slinkard car came to a rest a few feet apart.

. . . . .

7. In a matter of seconds, and not more than a minute, Wilson ran into the rear of the Babb car injuring Slinkard.

8. Slinkard brought suit against both Babb and Wilson.

This court spoke as follows:

". . . Babb's acts did no more than furnish a condition by which the subsequent injury to the appellant was made possible, and under the rule of proximate cause, both in this state and in Kentucky, Babb's acts cannot be held to be the proximate cause of the injuries to the appellant.... It could not have been reasonably foreseeable that Babb's conduct would result

in the chain of events which caused appellant's injury, nor could the acts of the appellee Wilson, as recited in the facts set forth in this opinion, have been anticipated. The acts of Wilson constituted an intervening force which broke the chain of causation between Babb's conduct and the injuries of the appellant. . . . "

125 Ind.App. at 85–6, 112 N.E.2d 876.

*Slinkard* was followed by *Schroer, Guardian v. Funk & Sons, Inc.,* (1968) 142 Ind. App. 223, 233 N.E.2d 680. There an auto driven by Lewis stopped behind a school bus which children were boarding. A truck owned by Funk collided with the bus, and the two vehicles came to rest in the southbound lane. Forty-five minutes later, after the police arrived and put out flares and other warnings, one Hermanson, with plaintiff's ward as a passenger, collided with yet a second truck which the police had stopped. Suit was brought against Funk and its driver, and Hermanson. The court followed *Slinkard* and held that Funk's wreck was a mere condition, and Funk's antecedent negligence did not continue.

Another result, yet possibly distinguishable, was reached in *Dreibelbis v. Bennett,* (1974) 162 Ind.App. 414, 319 N.E.2d 634. There a car-truck wreck blocked the highway, and the court found that one of the participants, Dreibelbis, was negligent per se for failing to post appropriate warning devices required by Ind.Code 9–8–6–42. The plaintiff Bennett voluntarily stopped to help and placed flares at the collision site. While attempting to rekindle one of his flares which had gone out, plaintiff was struck by Fedders, a passing motorist who had swerved to avoid the wreck. The court in affirming the judgment against Dreibelbis, said:

"Dreibelbis posits that Bennett's injuries were an unforeseeable consequence of negligence which merely furnished a condition for the intervention of Fedders. Considering the factual and appellate posture of this case, we see no need for an exhaustive consideration of the semantics of proximate causation. One's negligence *may* furnish a mere condition for

the incidence of another's negligence and allow the original actor to escape liability. *Schroer v. Funk & Sons, Inc.* (1968), 142 Ind.App. 223, 233 N.E.2d 680; *Slinkard v. Babb* (1953), 125 Ind.App. 76, 112 N.E.2d 876. If true, such negligence was not the active or efficient cause of the resulting injury. However, the ultimate test of legal proximate causation is reasonable foreseeability. The assertion of an intervening, superseding cause fails to alter this test. *City of Indianapolis v. Falvey* (1973), 156 Ind.App. 366, 296 N.E.2d 896. For this Court to affirm a positive finding of proximate causation, we need only conclude that the evidence presented supports a reasonable conclusion that the original wrong was one of the proximate rather than remote causes. *Swanson v. Slagal* (1937), 212 Ind. 394, 8 N.E.2d 993; *Evansville & Ohio Valley Ry. Co. v. Woosley* (1950), 120 Ind.App. 570, 93 N.E.2d 355.

. . . Based upon the facts before us, we are not compelled to conclude that those facts lead to but one conclusion which is contrary to that reached by the jury in finding that Dreibelbis's negligence *per se* was the proximate cause of Bennett's injuries. The question of proximate causation was properly left to the trier of fact."

162 Ind.App. at 420–21, 319 N.E.2d 634.

The Seventh Circuit in the Indiana diversity case of *Peck v. Ford Motor Company,* (7th Cir.1979) 603 F.2d 1240, followed *Slinkard* and *Schroer,* distinguishing *Dreibelbis* on the basis that the Dreibelbis tort was the failure to prevent additional harm; not the original driving. *Peck* involved a truck which was stalled on a highway because of mechanical failure and thereafter struck by the plaintiff. The court stated:

"Without being precise as to the exact moment, under the guidance furnished by Indiana decisions presently available, it would appear that shortly after the truck came to a stop on the highway and other vehicles in the area had safely cleared the stopped truck, Ford had no further duty of the facts of the case to prevent harm.

Its tort had 'spent its force.' That duty had passed to the driver who was clearly in the best position to prevent further harm." (Footnote omitted.)

603 F.2d at 1244–45.

■ An analysis of the cases indicates a variety of factors which may contribute to the result in a particular case, including the time element and the conditions surrounding the original wreck. However, the ultimate test is reasonable foreseeability. In some cases the original negligence should continue and the actor should not be absolved. In other cases, because of the facts, it should not. Here, because the first collision occurred on a dark, rainy, and foggy night, the possibility or even probability that a wreck on a state highway would lead to other motorists running into the wreck was clearly foreseeable. Therefore any negligence (intoxication) of Stewart and contributory negligence (intoxication) of Colaw was admissible against the mere objection of relevancy, and an instruction on intoxication not error. Evidence may be found relevant although the ability to persuade is extremely slight. There are counterbalancing factors which affect the trial court's discretion where possible confusion or prejudice to a party outweigh the value of the evidence. *Smith v. Crouse-Hinds Company,* (1978) 175 Ind.App. 679, 373 N.E.2d 923. *City of Indianapolis v. Swanson,* (1983) Ind., 448 N.E.2d 668. However, Colaw's objection only of relevancy did not preserve that question.

■ We are of the opinion that the trial court committed reversible error in giving Nicholson's tendered incurred risk instruction, being Pattern Instruction No. 5.61. Colaw's objection to the instruction raises the question of insufficiency of the evidence to support the instruction, citing *Kroger Company v. Haun,* (1978) Ind.App., 177 Ind.App. 403, 379 N.E.2d 1004. Incurred risk was not pleaded, nor was it stated as a defense in the pretrial order. *Kroger* states that incurred risk demands a subjective analysis into the particulars of an actor's knowledge. Incurred risk involves a voluntary acceptance of the risk; a

mental state of venturousness. It requires much more than the general awareness of a potential for mishap. Incurred risk contemplates acceptance of a specific risk of which the plaintiff has actual knowledge. *Moore v. Moriarty,* (1981) Ind.App., 415 N.E.2d 779. A defendant has the burden of proving incurred risk. *Ind.Rules of Procedure,* Trial Rule 8(C); *State v. Collier,* (1975) 165 Ind.App. 239, 331 N.E.2d 784. Contrary to Nicholson's bare assertion, the record here is devoid of evidence of any relationship between Stewart and Colaw. The record states only that Colaw was a passenger in Stewart's automobile and both were intoxicated. Nicholson did not burden the trial court, and thereby us, with any evidence of conduct that would throw light on Colaw's knowledge or voluntarily incurrence of risk. We do not even know if they were acquainted, where they had been, whether Colaw was a hitchhiker, was in the car voluntarily, or was put in the car by others because he was drunk. Without any background evidence, the imposition of incurred risk would be speculative. The absence of any such evidence does not, under *Kroger,* raise the issue of incurred risk. Without a showing of incurred risk in the first accident, there could be no incurred risk flowing through to the second accident; Colaw was very badly hurt and lying inert in the road. Nicholson's assertion that Colaw's intoxication contributed to his inability to extricate himself from the road in light of his injuries, is facetious.

It is error for the court to give instructions that are not pertinent to the issues and applicable to the evidence. *Baker v. Mason,* (1968) 253 Ind. 348, 242 N.E.2d 513.

■ Nicholson argues that even if the instruction on incurred risk was erroneous as unsupported by the evidence, it was harmless error, and reversal is indicated only where it appears that the jury verdict could have been predicated upon it. *Joy v. Chau,* (1978) Ind.App., 177 Ind.App. 29, 377 N.E.2d 670. Giving an instruction on incurred risk or contributory negligence where it is unsupported by the evidence is reversible error. *Pfisterer v. Grisham,*

(1965) 137 Ind.App. 565, 210 N.E.2d 75. That case was predicated, as here, on the fact that plaintiff lacked knowledge of the risk, and the court held that the instruction was, as a matter of law, erroneous.

*Issue VI. Weight of medical testimony*

■■■ The trial court gave Nicholson's Tendered Instruction No. 6 as follows:

"Defendant's Instruction 6

I instruction you that a Doctor's Testimony can only be considered evidence when he states that conclusion he gives is based on reasonable medical certainty that a fact is true or untrue. A doctor's testimony that a certain thing is possible is no evidence at all and should not be considered by you in determining the cause of William Colaw's death."

Counsel's objection to this instruction appears in the record at p. 459 and reads as follows:

"The plaintiff would object to the giving of defendant's instruction number 6 dealing with doctor's testimony on the grounds that this is a rule of evidence for the Court and not an issue for the jury. This instruction also deals with the effect of a doctor's testimony being considered evidence when he states that his opinion is based upon a reasonable degree of medical certainty. That's something the Court has ruled on and it's a rule of evidence for the Court and not a proper instruction of law for the jury."

The language of the instruction was taken from *Palace Bar, Inc. v. Fearnot,* (1978) 269 Ind. 405, 381 N.E.2d 858. *Palace Bar, Inc.* is relevant here because, as in the present case, much of the pathologist's testimony was couched in terms of possibility.

*Palace Bar* may have been modified in *Noblesville Casting Division of TRW, Inc. v. Prince,* (1982) Ind., 438 N.E.2d 722. Following *Noblesville Casting,* which was written by Justice Hunter, such an instruction may now be erroneous. *Noblesville Casting* held that expert medical opinion couched in terms less than that of a reasonable degree of medical certainty; such as "possible,"

"probable," or "reasonably certain," are admissible and do have probative value. However, such medical testimony standing alone, unsupported by other evidence, is not sufficient to support a verdict, as was stated in *Palace Bar.* It is for the jury to determine the weight to be accorded the testimony.

Justice Pivarnik, who wrote the opinion in *Palace Bar,* concurred only in the result reached in *Noblesville Casting.* He dissented on the conclusion reached by Justice Hunter that expert opinion based upon "possibilities" is probative evidence. Justice Given concurs in Justice Pivarnik's opinion; Justice Prentice concurred with Justice Hunter. Justice DeBruler did not participate. The precedental value of *Noblesville Casting* is thus in doubt.

This cause is reversed and the trial court is ordered to grant a new trial.

Reversed and remanded.

ROBERTSON, P.J., concurs.

RATLIFF, J., concurs in result.