W. Hobart PIERCE, Individually and as Administrator of the Estate of Richard L. Pierce, Deceased, et al., Plaintiffs-Appellants,

v.

UNITED STATES of America, Defendant-Appellee.

No. 81–5015.

United States Court of Appeals, Sixth Circuit.

Argued March 16, 1982.

Decided May 27, 1982.

Thomas C. Binkley, Nashville, Tenn., Donald W. Madole, Juanita M. Madole, Washington, D. C., Glover McGhee, Atlanta, Ga., Glenn T. York, Cedartown, Ga., for plaintiffs-appellants.

Kathlynn Fadley, Civ. Div., U. S. Dept. of Justice, Washington, D. C., Gary Allen, F.A.A., Washington, D. C., for defendant-appellee.

Before LIVELY and KEITH, Circuit Judges, and PECK, Senior Circuit Judge.

LIVELY, Circuit Judge.

These consolidated actions were brought under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671 (1976). The plaintiffs-appellants are the personal representatives of the pilot and passengers who were killed in the crash of a private airplane. Following a bench trial, the district court found that the plaintiffs had failed to carry their burden of proof and entered a judgment for the defendant in each of the actions.

I.

The pilot of the ill-fated plane was Richard Pierce who had a private license which required that he fly only under visual flight rules (VFR). VFR pilots are not permitted to fly under weather conditions which render it impossible to conduct the flight by visual references outside the airplane. When such weather conditions prevail, instrument flight rules (IFR) are in effect. In IFR conditions a pilot conducts the flight through the use of onboard instruments and communications with ground controllers. A VFR pilot is not permitted to fly under IFR conditions. A VFR pilot is required to ascertain that his entire route maintains VFR conditions or that detours therefrom permit him to proceed VFR. VFR conditions relate to cloud ceilings and visibility which must be at or above certain prescribed minima. For the area surrounding the crash site, flying at an altitude of more than 1,200 feet above the surface but less than 10,000 feet above mean sea level, outside con-

trolled airspace, VFR conditions would require that there be visibility of one statute mile. 14 C.F.R. § 91.105. In addition, the regulations require that an aircraft maintain the following distances from clouds: 500 feet below, 1,000 feet above, and 2,000 feet horizontally.

On April 9, 1976 Richard Pierce flew five members of his family from Polk County, Georgia to New Castle, Indiana for a visit with other family members. The trip was made in a Cessna 210L airplane which Pierce had rented at Cedartown, Georgia. The trip to Indiana was uneventful, and the visitors planned to return to Georgia on Sunday, April 11th.

Since there was no flight service station (FSS) at New Castle, Pierce called the nearest such station, located at Indianapolis, for weather information during the afternoon of April 10th. Pierce was given a weather briefing by FSS Indianapolis in which he was told that a "marginal VFR situation" was forecast for the next day, but that if he planned an early departure on Sunday morning he should be able to get off and that he should have no problems through Kentucky and Tennessee, into Georgia and his destination: "They are figuring clear as a bell down in Georgia area, down through the state of Tennessee." The local area was rated marginal for VFR because a cold front was expected to move through Indiana on Sunday.

When Pierce called the Indianapolis FSS early on Sunday (5:32 a. m.) he was told that there were scattered rain showers with possible thundershowers throughout the area of central Indiana south to the Louisville, Kentucky area. Pierce then filed a flight plan which indicated that he would fly south to the Louisville area, then across Kentucky and Tennessee to Polk County, Georgia. The plan was to be activated when the local conditions at New Castle permitted a take off. During five additional conversations on Sunday the FSS operators continued to advise Pierce that his only

problem was the cold front then moving southward through southern Indiana and that he would have VFR weather all the way to his destination after he passed beyond the front. In each of these conversations, except the final one, Pierce was told by FSS Indianapolis that VFR flight was not recommended because of adverse weather conditions in Indiana. He was consistently advised, however, that the weather was favorable for VFR flying at Louisville and beyond on his projected route of travel.

The final weather briefing took place at 3:06 p. m. on April 11th. Pierce was told that conditions at Bloomington, Indiana had improved from IFR to VFR and that Louisville had VFR conditions. He was advised that there was light rain in the area of Crossville, Tennessee and that a pilot had reported light to moderate turbulence at 4500 to 6500 feet in a line from Knoxville to Birmingham. The FSS operator told Pierce that he would probably penetrate the cold front in southern Kentucky and encounter scattered rain showers there. Further, he advised that there were no IFR surface reports, though there could be pockets of IFR weather between stations reporting VFR conditions. After again filing his flight plan Pierce prepared to leave.

At the time of Pierce's final weather briefing a weather advisory referred to as SIGMET [1] Charlie 1 had been issued by the National Weather Service. This advisory stated: "Flight precautions in Tennessee for embedded thunderstorms; over Tennessee embedded thunderstorms with tops to 35,000 ft.; additionally thunderstorms occasionally forming lines or in clusters, maximum tops to 35,000 but activity increasing. Continued to 0000 GMT, April 12. [6:00 p. m. April 11, local time]." Other advisories then outstanding told of weather problems in southern Indiana and northern and eastern Kentucky. In addition a radar weather summary issued at 2:35 p. m. local time showed a wide coverage of rain and thunderstorms over Tennessee. The district

---

1.  A SIGMET is a flight advisory which provides notice to all aircraft of potentially hazardous weather.

court found it was probable that all of this information was available to the Indianapolis FSS at the time of Pierce's 3:06 briefing. He was not advised of any of it at that time or after he became airborne. The court also found that Pierce could have become aware of SIGMET Charlie 1 by turning up the volume on one of his receivers, since the existence of a SIGMET is broadcast every 15 minutes during the first hour of its effectiveness.

The Cessna took off at approximately 3:50 p. m., and Pierce called the Indianapolis FSS from the air to activate his flight plan. There were no more transmissions to or from Pierce between take-off and the time of the crash, approximately 1½ hours later. The crash occurred when the left wing separated from the plane which went into a vertical dive near Allardt, Tennessee. The district court concluded that the immediate cause of the crash could not be determined conclusively because the horizontal stabilizers and elevators of the plane had not been preserved. Nevertheless, expert witnesses gave their opinions of the cause based on examination of parts of the plane which were available for examination, photographs, eyewitness accounts and records of weather conditions at the time of the crash. Two conflicting theories were presented. The plaintiffs contended that Pierce encountered an embedded thunderstorm which subjected the wings to a stress which was beyond their capacity, resulting in the left wing being torn violently from the plane. The defendant's theory was that Pierce attempted to penetrate an area of adverse weather associated with the cold front of which he had been advised, that he became disoriented and unintentionally put the plane into a spiral dive. When he emerged from the clouds, according to the defendant, Pierce overreacted and executed a movement which applied forces in excess of the structural design limitations of the plane.

In its memorandum opinion the district court concluded that the plaintiffs had not proved that atmospheric gusts caused the airframe failure and consequent crash and thus had failed to meet their burden of proof. Since the plaintiffs had failed to prove "actual causation" the district court found it unnecessary to make any findings with respect to negligence of the defendant or proximate cause. In a subsequent memorandum denying the plaintiffs' motion for reconsideration the district court wrote, "The plaintiffs have failed their burden of proving that weather as opposed to pilot error, caused the crash of N1649X."

## II.

### A.

Under the Federal Tort Claims Act governmental immunity is waived to the extent of permitting civil actions against the United States for money damages "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). The district court concluded that the substantive law of Indiana controls the issue of liability in the present case, and we agree. If there was any negligent act or omission by a government employee, it consisted of relaying inaccurate weather information to Pierce, or failing to relay available weather information which might affect his flight. These acts or omissions, if any, occurred at the Indianapolis FSS facility.

In *Long v. Johnson*, 381 N.E.2d 93, 100 (Ind.App.1978), the First District Court of Appeals of Indiana stated:

> To establish a prima facie case of negligence, that is, to present sufficient evidence upon which the jury may return a verdict for the plaintiff, that party must introduce testimony or other evidence which shows: 1) a duty on the part of the defendant; 2) a failure to perform that duty; and 3) damages or injuries proximately resulting to that party as a result

of such failure. *Clayton v. Penn Central Transportation Co.* (1978), Ind.App., 376 N.E.2d 524.

The district court did not "find the facts specially and state separately its conclusions of law thereon...." Rule 52(a), F.R.Civ.P. Instead, it wrote an opinion which contained some findings and conclusions as permitted by Rule 52(a). However, there are no findings or conclusions on elements of a prima facie case of negligence as described in *Long v. Johnson, supra.*[2]

■ No issue was made of the first requirement—the duty of Indianapolis FSS to advise Pierce accurately of known and predicted weather conditions along his projected route of travel. Since the FAA has undertaken to advise requesting pilots of weather conditions, thus engendering reliance on facilities such as the Indianapolis FSS, it is under a duty to see that the information which it furnishes is accurate and complete. *See Indian Towing Co. v. United States,* 350 U.S. 61, 69, 76 S.Ct. 122, 126, 100 L.Ed. 48 (1955); *Reminga v. United States,* 631 F.2d 449, 452 (6th Cir. 1980); *Ingham v. Eastern Air Lines, Inc.,* 373 F.2d 227, 238 (2d Cir.), *cert. denied sub nom. United States v. Ingham,* 389 U.S. 931, 88 S.Ct. 295, 19 L.Ed.2d 292 (1967); *Gill v. United States,* 429 F.2d 1072, 1075–77 (5th Cir. 1970). This duty to inform is owed to passengers as well as pilots. *Freeman v. United States,* 509 F.2d 626, 629 (6th Cir. 1975). Since the government's duty was not contested, a specific finding on this issue was unnecessary. The second and third requirements for negligence liability were contested, however. At trial the government took the position that it fulfilled its duty to Pierce by advising him of scattered rain and possible thunderstorms in Tennessee. The plaintiffs maintained that the duty was breached by repeated advice that VFR conditions prevailed from Louisville south, all the way to the Georgia destination, and by the failure to advise of SIGMET Charlie 1 and other reports of bad weather along the intended route of travel.

The district court made no finding on whether the government breached its duty, concluding that such a finding was not required in view of its holding that the plaintiffs had failed to meet their burden of proof. The court dealt similarly with the question of proximate cause. In addition, though it discussed Pierce's failure to monitor weather broadcasts en route and noted that he had requested no further weather information, the district court made no finding on the issue of contributory negligence, which the government had plead as an affirmative defense.

B.

■ We believe the district court erred in failing to address the second and third requirements for negligence liability and the affirmative defense. The fact that the plaintiffs were unable to demonstrate the immediate cause of the crash does not rule out the possibility of liability on the part of the government. It has always been the position of the plaintiffs that negligence of employees of the Indianapolis FSS caused the plane to be in a place where weather endangered it and that even if the pilot did become disoriented after entering the clouds the government's negligence was at least a concurrent proximate cause of the crash and fatal injuries. It is not necessary for a plaintiff to prove that negligence of a government employee was the sole proximate cause in order to recover. In *Ingham v. Eastern Air Lines, Inc., supra,* 373 F.2d at 237, a judgment against the government based on the failure of an air traffic controller to relay necessary weather information as soon as possible was upheld on a finding that this negligence was "a proximate and concurrent cause of the accident." (Footnote omitted, emphasis added). In that case Eastern was held concurrently liable with the United States because the pilot of the crashed plane continued "its landing approach after losing alignment with the runway. *Id.* at 231. In *Himmler*

---

2. The importance of factual determinations in a case such as this is evident. If the facts are found "specially" and stated clearly, appellate review is facilitated. *Compare Metalock Repair Service, Inc. v. Harman,* 258 F.2d 809 (6th Cir. 1958).

*v. United States,* 474 F.Supp. 914 (E.D.Pa. 1979), damages were awarded against the United States upon a finding that failure of a controller to keep in more continuous communication with a VFR pilot caught in IFR conditions was "a substantial contributing factor in the cause of the pilot's spatial disorientation and the resulting accident." *Id.,* at 922. *See also Thompson v. United States,* 15 Av. Cases 18,294 (C.D.Ill.1979).

It is clear that there can be more than one proximate cause of an airplane crash. The "actual" or immediate cause of a crash may not be provable, especially where all the occupants perish in the accident. In the present case the district court found that the critical parts of the plane which might have shown the actual cause were unavailable. The mere fact that the plaintiffs were unable to show which of two projected causes was the actual cause of the crash did not mean that they had failed in their burden of proof. If they established a breach of duty by the government which was either the sole proximate cause or a concurrent proximate cause they made out a prima facie case. A decision founded on circumstantial evidence which presents two opposing theories, particularly where expert testimony has been received, is not based on improper speculation. *See Hartzler v. Chesapeake & O. R. Co.,* 433 F.2d 104, 108 (7th Cir. 1970) (applying Indiana law).

### C.

Upon remand the district court should make findings of fact on the issues of breach of duty and proximate cause.[3] The breach of duty in this case would consist of repeated assurances to Pierce that conditions were VFR from Louisville to his destination, and the failure to relay the contents of SIGMET Charlie 1 and the 2:35 radar weather summary to Pierce if they were available to the Indianapolis FSS. If the district court finds a breach of duty it must

then address the issue of proximate causation. Though the government does not concede a breach of duty, it argues that the sole cause of the crash was pilot error. Its position, in effect, is that even if its employees breached a duty owed to plaintiffs' decedents, pilot error was an independent intervening act of negligence which relieved the government of liability. The Appellate Court of Indiana in banc dealt with the meaning of proximate cause and the difference between an intervening cause and a concurrent and contributing cause in *Tabor v. Continental Baking Co.,* 110 Ind.App. 633, 38 N.E.2d 257, 261 (1941):

"There is no mystery in the doctrine of proximate cause. It rests upon common sense rather than legal formula. Expressed in the simplest terms it means that negligence is not actionable unless it, without the intervention of any independent factor causes the harm complained of. It involves of course the idea of continuity, that the negligent act continuously extends through every event, fact, act and occurrence related to the tortious conduct of the defendant and is itself the logical and natural cause of the injury complained of. In the statement of the doctrine an intervening cause means not a concurrent and contributing cause, but a superseding cause, which is itself the natural and logical cause of the harm." *Holler v. Lowery,* 175 Md. 149, 200 A. 353, 358; Shearman & Redfield on Negligence, 1941 Ed., Vol. 1, Sec. 33, p. 92.

[4] If the district court finds proximate causation it must then deal with the defense of contributory negligence. If Pierce's actions constituted contributory negligence, such negligence would affect only the claim for damages for his death. Negligence of the pilot would not be imputed to the passengers. *Swanson v. Slagal,* 212 Ind. 394, 8 N.E.2d 993, 1000 (1937) (a driver's negligence not imputed to a passen-

---

**3.** The district court's finding that the nearest thunderstorm at the time of the crash was 50 miles from the scene did not settle this question. It is clear from eyewitness testimony that it was a dark, overcast day and that there were clouds in the area. Indeed, the government argued that Pierce became disoriented after flying into a cloud. Thus the district court did not determine whether a proximate cause of the crash was Pierce's encountering IFR weather conditions of which he had not been warned.

ger); *see Air Crash Disaster at New Orleans*, 544 F.2d 270 (6th Cir. 1976) (the negligence of a pilot is in no way attributable to his passengers and will not relieve the government of liability if negligence of its employees also contributed to causing the accident). But if, as the government maintains, negligence of the pilot was the sole proximate cause of the crash, then the government is not liable even though negligent. *Roland v. United States*, 463 F.Supp. 852, 854 (S.D.Ind.1978).

If the district court finds a breach of duty by the government, it should then make findings on the questions of contributory negligence and proximate cause, which will involve determining what role, if any, pilot error played in the crash. *See Gill v. United States, supra.*

The judgment of the district court is vacated, and the cause is remanded for further proceedings consistent with this opinion.