W. Hobart PIERCE, Individually and as Administrator of the Estate of Richard L. Pierce, Deceased, et al., Plaintiffs-Appellants,

v.

UNITED STATES of America, Defendant-Appellee.

No. 82-5424.

United States Court of Appeals, Sixth Circuit.

Argued June 21, 1983.

Decided Oct. 12, 1983.

Rehearing Denied Nov. 10, 1983.

Juanita Madole, Donald W. Madole, Speiser, Krause & Madole, Washington, D.C., Glover McGhee (argued), Swift, Currie, McGhee & Hiers, Atlanta, Ga., Thomas C. Binkley, Howser, Thomas, Summers, Binkley & Archer, Nashville, Tenn., for plaintiffs-appellants.

Kathlynn Fadely (argued), Civ. Div., U.S. Dept. of Justice, Gary Allen, F.A.A., Washington, D.C., for defendant-appellee.

Before LIVELY, Chief Judge, EDWARDS, Circuit Judge, and PHILLIPS, Senior Circuit Judge.

LIVELY, Chief Judge.

This is the second appeal in this action brought pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346 and 2671 (1976). The plaintiffs-appellants are the personal representatives of the pilot and five passengers in a small airplane, all of whom died in the crash of the plane on April 11, 1976. The facts are set forth in this court's earlier opinion. See *Pierce v. United States,* 679 F.2d 617 (6th Cir.1982).

I.

In finding for the defendant following a seven-day trial the district court determined that the plaintiffs had failed to prove the actual cause of the crash and that this failure precluded recovery. On appeal this court concluded that the applicable law of Indiana would permit a finding of liability

if the defendant were negligent and this negligence were at least a concurrent proximate cause of the crash and fatal injuries. The judgment of the district court was vacated and the case remanded for findings by the district court on the two disputed elements of tort liability under Indiana law: breach of duty and proximate cause. (The government's duty to give accurate weather advice to pilots was not disputed). The remand also required the district court to deal with the defense of contributory negligence in the event it found a breach of duty and proximate causation. *Id.* at 621–22.

Following remand the district court filed a memorandum containing additional findings:

> The court finds:
>
> (1) The Government was negligent in not briefing the pilot with SIGMET Charlie 1 and the change of weather conditions in portions of Tennessee.
>
> (2) The failure of the Government to brief the pilot was not the proximate cause of the accident. The proximate cause of the accident was pilot error as a result of vertigo from flying into a cloud when there was no necessity to so fly. There was no thunderstorm at the place of the accident. There was rain and scattered clouds, but there was VFR weather. Thus the failure of the Government to perform its duty was immaterial as a causative force.

In accordance with these findings the district court again dismissed the action, and this appeal followed.

The government does not seriously contest the finding that it was negligent in failing to inform the pilot of SIGMET Charlie 1 and the change of weather conditions in portions of Tennessee. This finding is amply supported by the evidence and is not clearly erroneous. Rule 52(a), F.R. Civ.P. The dispute on appeal centers around paragraph (2) of the district court's memorandum which contains several findings: (a) There was no thunderstorm at the place of the accident; though there was rain and scattered clouds, the weather was VFR. (b) The negligence of the defendant in failing to brief the pilot was not the cause of the crash; the cause was pilot error resulting from vertigo after flying into a cloud. Having found no causation the district court did not consider the defense of contributory negligence.

When read in conjunction with our remand and its previous opinion the district court's memorandum appears to hold that the sole proximate cause of the crash was pilot error. ("Thus the failure of the Government to perform its duty was immaterial as a causative force.") In its original opinion the district court found that the nearest thunderstorm was 50 miles away at the time of the crash. We noted that this did not dispose of the issue of proximate cause since there were clouds in the area and the district court did not state whether the pilot encountered IFR weather of which he had not been warned. 679 F.2d at 622 n. 3. On remand the district court found that there was VFR weather at the place of the accident, but that the pilot had flown into a cloud and had become disoriented.

## II.

The parties appear to agree that the only issue to be decided on this appeal is whether the district court ruled correctly on the issue of causation. The government had a duty to give the pilot complete and accurate weather information and it breached this duty by failing to advise him of SIGMET Charlie 1 and of changing weather conditions in Tennessee. The plaintiffs argue that this negligence was "the initiating causal factor of the disaster and was a proximate and contributing cause of the resulting crash." Under Indiana law the plaintiffs were not required to prove that the government's negligence was the sole proximate cause of the accident, they contend. It was sufficient to prove that this negligence was a proximate and contributing cause. The plaintiffs assert that if the pilot had been advised of SIGMET Charlie 1—the possibility of embedded thunderstorms in Tennessee—and of changing weather conditions during his final weather briefing, he would not have undertaken the

flight. If there had been no take-off, there would have been no crash. Thus, the plaintiffs maintain, the finding that the government's breach was "immaterial as a causative force" is clearly erroneous.

The plaintiffs also argue that the district court's finding on causation is erroneous because it is based on a misapplication of Indiana law. They contend that the district court overlooked, or ignored, the element of foreseeability in making its proximate cause finding. The plaintiffs rely particularly on the following language from *Tabor v. Continental Baking Co.,* 110 Ind.App. 633, 38 N.E.2d 257, 261 (1941):

> The courts of this state have applied as a test for proximate or legal cause the test of foreseeability. If the wrongful act of the defendant is a substantial factor in producing the injury complained of, and if the particular injury suffered by the plaintiff is one of a class that was reasonably foreseeable at the time of the defendant's misconduct, then there is a causal relation in fact as well as a legal cause. *Swanson v. Slagal, Adm'x,* 1937, 212 Ind. 394, 406, 413, 8 N.E.2d 993.

> In the Restatement of the Law the rule concerning foreseeability of harm as applied to a negligent actor is stated as follows: "If the actor's conduct is a substantial factor in bringing about harm to another, the fact that the actor neither foresaw nor should have foreseen the extent of the harm or the manner in which it occurred does not prevent him from being liable."

> And, further, in comment: "On the other hand, if the actor should have realized that his conduct might cause harm to another in substantially the manner in which it is brought about, the harm is universally regarded as a legal consequence of the actor's negligence." Restatement of the Law, Torts, Negligence, § 435 p. 1173.

Though the plaintiffs argue that the district court's finding of pilot error is clearly erroneous, they maintain that pilot error under the circumstances of this case would not have relieved the government of liability. It was foreseeable, they assert, that a pilot who had not been advised of dangerous weather conditions might make the wrong choice when unexpectedly encountering such conditions. Since such error was foreseeable, any negligence on the part of the pilot would not be an independent, intervening cause of the crash which would break the chain of causation set in motion by the government's negligence. This argument is buttressed by the following language from *New York Central R.R. Co. v. Cavinder,* 141 Ind.App. 42, 50, 211 N.E.2d 502, 508 (1965) (In Banc):

> Where there is an independent responsible agency intervening between the defendant's negligence and the injury, the question whether the original negligence is the proximate cause of the injury is to be determined by whether the agency might have been reasonably expected under the circumstances to intervene in such a way as to be likely to produce an injury similar to the one actually caused. *Northern Ind. Transit, Inc. v. Burk,* supra (1950), 228 Ind. 162, 175–177, 89 N.E.2d 905, 17 A.L.R.2d 592; *Engle, Admr. v. Director General Railroads* (1922), 78 Ind. App. 547, 551, 133 N.E. 138 (Transfer denied); 21 Ind.Law Encyc., Negligence, § 67, p. 331.

> Generally, where harmful consequences are brought about by intervening independent forces the operation of which might have been reasonably foreseen, then the chain of causation extending from the original wrongful act to the injury is not broken by the intervening and independent forces and the original wrongful act is treated as a proximate cause. *Northern Ind. Transit, Inc. v. Burk,* supra (1950), 228 Ind. 162, 176–177, 89 N.E.2d 905, 17 A.L.R.2d 592; *Chicago, etc. R. Co. v. Mitchell* (1914), 56 Ind.App. 354, 358–359, 105 N.E. 396; *Leatherman v. Gateway Transportation Company* (7th Cir.1964), 331 F.2d 241, 243; 21 Ind.Law Encyc., Negligence, § 67, p. 332.

The government does not seriously disagree with the plaintiffs on the law of proximate cause. It agrees that liability exists

under Indiana law only when the general harm which eventually results is foreseeable at the time of the negligent act and the negligence operates continuously to the time of injury without the intervention of an independent act of negligence. However, the government stresses the difference between remote cause and proximate cause and the requirement that the chain of causation not be broken. It cites the following quotation from *Milwaukee & St. Paul Railway Co. v. Kellog,* 94 U.S. 469, 24 L.Ed. 256 (1877), adopted by the Appellate Court of Indiana in *Sarber v. City of Indianapolis,* 72 Ind.App. 594, 126 N.E. 330, 333 (1920):

> The question always is, Was there an unbroken connection between the wrongful act and the injury—a continuous operation? Did the facts constitute a continuous succession of events, so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury? It is admitted that the rule is difficult of application. But it is generally held that, in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in light of the attending circumstances. * * * We do not say that even the natural and probable consequences of a wrongful act or omission are in all cases to be chargeable to the misfeasance or nonfeasance. They are not when there is a sufficient and independent cause operating between the wrong and the injury.... The inquiry must therefore always be whether there was any intermediate cause disconnected from the primary fault, and self-operating, which produced the injury.

The government emphasizes the fact that the pilot was told repeatedly that he would be required to pass through a cold front, with its associated clouds and possible rain, during the projected journey. He was also told that although all ground stations were reporting VFR conditions just prior to the plane's departure, he might encounter areas where IFR conditions prevailed. Since the cold front was moving southward Pierce was also advised that he could change his course to the north and return to Indiana rather than continuing to Georgia if he encountered bad weather. Since Pierce took off knowing he had to pass through a cold front and might encounter local IFR conditions along his proposed path of flight, the government finds it highly unlikely that specific knowledge of changing weather conditions in Tennessee would have deterred him. It also argues that the pilot's act of flying needlessly into a cloud under VFR conditions was not foreseeable but was an intervening, independent act of negligence which broke any chain of causation previously existing.

### III.

 In holding that the government's negligence was not the proximate cause of the crash the district court made several subsidiary findings of fact: (1) There was no thunderstorm at the place of the accident; (2) the weather was VFR though there was rain and scattered clouds in the area; (3) the pilot suffered vertigo after flying into a cloud; (4) flying into a cloud was pilot error because there was no necessity to do so. Our review of the record convinces us that none of these findings is clearly erroneous; rather, all are supported by substantial evidence. The testimony of eyewitnesses and documentation from the National Weather Service were sufficient to support a finding that there was no thunderstorm in the area. The only evidence to the contrary was a series of radar photographs which the plaintiffs' expert witness interpreted as depicting a "hook" or "tail" indicative of microcyclonic turbulence. However, the expert witnesses produced by the government testified that such turbulence could only accompany a thunderstorm and that the nearest one was over 50 miles away. If there was no thunderstorm, failure to advise Pierce of SIGMET Charlie

1 was immaterial since that advisory dealt only with embedded thunderstorms.

As we indicated in our first opinion, the proximate cause issue was not settled by the determination that there was no thunderstorm in the area. The district court also found negligence in the failure to advise of changing weather conditions in parts of Tennessee. If Pierce had encountered IFR weather at the place of the accident after being advised that the weather was VFR he would have been presented with an unexpected danger. However, the district court has now made a specific finding that VFR conditions prevailed at the crash site. This finding is supported by the expert testimony of National Weather Service employees who referred to official documents as well as interpreting eyewitness descriptions of weather conditions, and the testimony of a pilot who passed through the area 20 minutes after the crash and found VFR conditions. This finding that conditions were VFR disposes of the argument that Pierce was confronted with conditions about which he had not been advised. He knew of the cold front, and did not encounter unexpected IFR conditions.

The left wing was torn from the plane before it crashed. From the beginning the plaintiffs have maintained that this damage could only have resulted from extremely strong upward gusts. They argue now that the district court's finding of pilot error is clearly erroneous because it assumes that a vertical dive caused the damage which led to the crash. There was a great deal of evidence related to the condition of the plane after the crash. The district court found most of this expert testimony inconclusive as critical parts of the plane were not salvaged. Though the plaintiffs presented competent evidence in support of their theory the district court was not required to accept it, because there is also a great deal of evidence to support the finding of pilot error resulting in vertigo and disorientation. Witnesses who lived near the local airport heard unusual engine noises emanating from the clouds. Expert witnesses testified that these sounds indicated a plane in a spiral dive. Several witnesses testified that they saw the plane fall out of the clouds, or at least saw it fall from an area of clouds. Only one eyewitness testified that he saw the plane in level flight and this for only a few seconds. Expert witnesses testified that the plane would have appeared to be horizontal briefly as Pierce tried to pull it out of a dive. These witnesses also testified that the stresses resulting from the dive and Pierce's attempt to stop it caused the left wing to separate. Several pilots testified to the danger of vertigo and likelihood of disorientation when a VFR pilot enters clouds and loses visual references. The fourth subsidiary finding, that there was no necessity for Pierce to enter a cloud, is supported by the finding that VFR conditions existed at the crash site. It is undisputed that VFR pilots are not to fly into clouds if they can be avoided.

■ Since none of the subsidiary findings of fact is clearly erroneous, we conclude that the ultimate question of proximate cause was correctly decided. Unless the evidence is such that a reasonable person could reach only one conclusion, proximate cause is a question of fact. *New York Central R.R. Co. v. Cavinder, supra,* 211 N.E.2d at 508; *Bridges v. Kentucky Stone Co.,* 408 N.E.2d 575, 576 (Ind.App.1980). The evidence was in sharp dispute in this case. The district court concluded that the only negligence ascribed to the government, the failure to advise Pierce of SIGMET Charlie 1 and of changing weather in Tennessee, was not the proximate cause of the accident. It is not enough to satisfy the requirement of proximate cause that the crash was weather-related. Nor is proximate cause determined by a mere "but for" test. Since neither an embedded thunderstorm nor a change from VFR to IFR conditions caused the crash, it is immaterial that Pierce might not have taken off if he had known of the possibility of encountering these particular weather phenomena. He knew if he made the trip on April 11, 1976 it would be necessary to pass through areas of clouds and rain associated with a cold front. The district court found that

the adverse weather conditions at the scene of the crash consisted only of rain and scattered clouds, of which he had been advised.

 It was Pierce's failure to stay out of the scattered clouds while flying under VFR conditions which led to his loss of orientation and the tragic crash. This finding of the immediate cause, or cause in fact, of the crash does not end our inquiry, however. Proximate or legal cause may be different from cause in fact, and the test for proximate cause is one of foreseeability. *Tabor v. Continental Baking Co., supra.* We conclude that the failure to advise the pilot of the possibility of other adverse weather conditions, which he did not in fact encounter, was not a contributing proximate cause. It was not foreseeable that failure to warn a VFR pilot of the possibility of embedded thunderstorms and of a possible change from VFR to IFR conditions along his path of flight would result in his flying into a cloud and becoming disoriented at a time and place where neither an embedded thunderstorm nor IFR conditions existed. This is not a case of two causes, both proximate, combining to bring about an injury, where one act is negligent and the other an event in which neither party was at fault. *Cf. Sarber v. City of Indianapolis, supra,* 126 N.E. at 331. Since this act of the pilot was unforeseen and was an independent act of negligence, it intervened to cut off any effect of the government's negligence which might have continued to the point of Pierce's act. *New York Central R.R. Co. v. Cavinder, supra.*

Since the negligence of the defendant was not the proximate cause of the plaintiffs' injuries the issue of the pilot's contributory negligence is irrelevant. If the crash had occurred as a result of the concurrent negligence of the pilot and the government, only the pilot's estate would have been barred from recovering in this action. As we noted in our earlier opinion, the negligence of a pilot is not imputed to the passengers. 679 F.2d at 622–23. However, in this case the government is liable to neither pilot nor passengers because its negligence was neither the sole nor a contributing proximate cause of the crash.

This is an extremely sad case where six members of a family lost their lives. The district court analyzed the evidence with meticulous care in its first opinion of 45 pages. It heard the testimony of many witnesses over a period of seven trial days and examined a large amount of documentary evidence. We conclude that the findings of fact are not clearly erroneous and that the district court correctly applied the law of Indiana to the facts.

The judgment of the district court is affirmed.