601 F.Supp. 10 (1984)
Carolyn S. LOMBARD, Ruth Thompson, Kenneth Spilger and Elizabeth Spilger, Plaintiffs,
v.
UNITED STATES of America, Defendant.
Elaine SPURGEON, Janet Carol Dunn, Jean Ann Matthews, and Mark Spurgeon, Plaintiffs,
v.
UNITED STATES of America, Defendant.
Nos. 81-1600-C(4), 83-0754-C(4).
United States District Court, E.D. Missouri, E.D.
August 17, 1984.
Order November 21, 1984.
*11 David J. Rauscher, Hirsch & Rauscher, Clayton, Mo., Robert F. Ritter, Gray & Ritter, St. Louis, Mo., for plaintiffs.
E. Glenn Parr, Kathlynn G. Fadely, Trial Attys., Tort Branch, Civil Div., U.S. Dept. of Justice, Washington, D.C., Thomas E. Dittmeier, U.S. Atty., U.S. Dept. of Justice, St. Louis, Mo., for defendant.

MEMORANDUM OPINION
CAHILL, District Judge.
This matter was tried to the Court without a jury. These actions arose from the crash of aircraft No. N4516L on September 17, 1980. The plaintiffs are the widows and children of the deceased and the sole survivor and his wife. The plaintiffs brought this action charging that defendant United States of America was liable for the negligent acts of its employees in causing the crash. The Court now makes and enters its findings of fact and conclusions of law and enters judgment for the defendant.

Findings of Fact.
1. At about 9:00 o'clock p.m. (Central Daylight Time) on September 16, 1980, Russell Spurgeon, a licensed visual flight rules (VFR) pilot, called the St. Louis Flight Service Station (FSS) located at the Spirit of St. Louis Airport and asked for weather information for his planned return flight to St. Louis. An FSS employee briefed Spurgeon on the weather and advised him that VFR flight was not recommended for his proposed route because of predicted low cloud layers and scattered thunderstorms associated with a cold front.
2. Spurgeon knew that weather conditions associated with cold fronts were dangerous to pilots because of sudden storms, high and gusty winds, and turbulence.
3. FSS personnel are not air traffic controllers and do not provide clearances or instructions to pilots. A flight service station is an air traffic facility which provides pilot briefings and in route communications, broadcasts aviation weather, processes flight plans, and offers other services to pilots.
4. At about 10:14 p.m., September 16, 1980, Spurgeon called the St. Louis FSS and received another weather briefing which again recommended against VFR flight.
5. At about 10:46 p.m., September 16, 1980, Spurgeon and his passengers, Donald Lombard, Lawrence Thompson, and Kenneth Spilger, took off from Kansas City Downtown Airport for St. Louis in disregard of the weather briefer's warning against attempting VFR flight.
6. At about 12:18 a.m., September 17, 1980, Spurgeon called the Spirit of St. Louis tower stating, "We're out near the outer marker here at, uh, 1300 feet, or, uh, do we have landings minimums?" At about 12:19 a.m., he stated, "We're out, uh, near the, uh, compass locator out here. Do we have, what is the, uh, uh, fog there?"
7. At about 12:19 a.m., Gilbert Carrol, an FSS employee, informed Spurgeon that the tower was not operating at that time and that he was flight service and would *12 give an airport advisory. Carrol then stated, "Present weather St. Louis Spirit measured ceiling 1400 broken, 2,200 overcast, visibility 5, light rain shower and fog. Airport advisory winds are now 320 at 10 favoring runway 25, Spirit altimeter two niner seven two, over." Except for the wind speed and direction this weather report was the same weather recorded at 11:53 p.m., September 16, 1980, roughly 26 minutes earlier.
8. Carrol did not reevaluate the weather, nor did he ask fellow FSS employees to do so. The evaluation relayed to Spurgeon had been taken 26 minutes earlier. FSS personnel were to maintain a Basic Weather Watch (BWW), take and record hourly observations beginning at roughly 15 minutes before the hour, and take and record special observations when specified weather conditions affecting aviation were observed. That is, FSS personnel performing a BWW were to recheck weather conditions to determine if a new observation is required when advised by any reliable source that existing conditions differ from those reported in the last disseminated observation. Carrol was not advised of conditions different from those recorded 26 minutes earlier.
9. FSS personnel are required to record ceilings of less than 1,000 feet when they occur and not simply on an hourly basis. Also, a special observation must be recorded if a wind shift occurs. The FSS personnel did not observe any clouds below 1,000 feet prior to the accident, either visually or on the desktop rotating beam ceilometer.
10. At the time Carrol was talking to Spurgeon, passenger Spilger, who was sitting directly behind Spurgeon, could see the parallel rows of runway lights ahead and below at the airport. The Spirit of St. Louis runway lights were approximately 5.4 nautical miles ahead and 839 feet below the aircraft.[1] Spilger did not observe any clouds at any time during the flight.
11. The weather observed by passenger Spilger and Spurgeon at the time he was talking to Carrol, about 12:19 a.m., was consistent with the weather Carrol reported in his airport advisory. Spurgeon made no indication to Carrol that he was having difficulty flying his aircraft, that he needed emergency assistance, or that he had encountered instrument flight rules (IFR) weather conditions.
12. At approximately 12:20 a.m., Spurgeon stated, "We just came over the outer marker, we'll be making a descent for landing." Spurgeon was then advised of another aircraft outside the outer marker making an instrument landing system (ILS) approach to runway 7. Spurgeon responded at about 12:21 a.m., "Affirmative, I'll be coming for, uh, I'm also on approach to 7 right now inside the outer marker, inside the compass locator."
13. Approximately 2 to 9 minutes later, Spurgeon's plane crashed killing Spurgeon, Lombard, and Thompson, and severely injuring Spilger.
14. Spurgeon may have been suffering from fatigue as he made his approach to the Spirit of St. Louis Airport. At the time of the crash he had been awake at least 20 consecutive hours, had flown about three hours, and had spent 12 hours at an all-day conference.
15. The preponderance of the evidence leads the Court to conclude that Spurgeon did not circle after executing a missed approach. Passenger Spilger testified that although he could feel the plane descend on its approach to land, he never felt it climb again, never felt it turn, and never heard the pilot apply power for a go-around. Spurgeon never indicated to the FSS that he was making a missed approach and circling back even though he knew another plane was behind him.
16. It appears that Spurgeon flew the airplane into the ground because of insufficient altitude awareness while descending over darkened terrain.

*13 Conclusions of Law.

1. This Court has jurisdiction over the parties and subject matter of this lawsuit pursuant to the Federal Tort Claims act, 28 U.S.C. § 1346(b).
2. Under the Federal Tort Claims Act the liability of the United States is governed by the law of the state where the negligence occurred. 28 U.S.C. § 1346(b).
3. In negligence actions, Missouri law generally requires the plaintiff to demonstrate that the defendant owed a duty to the plaintiff, that the defendant breached that duty, and that because of the breach the plaintiff was injured. See, e.g., Kim Manufacturing, Inc. v. Superior Metal Treating, Inc., 537 S.W.2d 424, 428 (Mo. App.1976).
4. The United States can be held liable under the Federal Tort Claims Act for the negligence of its Flight Service Station personnel. See Martin v. United States, 448 F.Supp. 855 (E.D.Ark.1977).
5. Since the FSS undertook to advise requesting pilots of weather conditions, thus engendering reliance, it was under a duty to see that the information which it furnished was accurate and complete. This duty is also owed to passengers. Pierce v. United States, 679 F.2d 617 (6th Cir.1982).
6. The FSS personnel's actions were not negligent and breached no duty owed to Spurgeon or his passengers. It is not enough that the harm may not have occurred had FSS personnel taken additional measures of speculative value. The FSS personnel accurately reported the weather as recorded approximately 26 minutes earlier. The FSS personnel did not observe specified weather conditions affecting aviation that would have required a special observation before disseminating weather information to Spurgeon. Further, the weather observation reported was consistent with the weather observed by Spurgeon and passenger Spilger at 12:19 a.m. while communicating with FSS employee Carrol. Even assuming that Spurgeon's 12:19 a.m. communication constituted an advisory of differing conditions, it does not appear that Carrol would have been able to take a new reading in time to prevent the crash. It takes about five to eight minutes to observe and record a weather observation at night at the Spirit of St. Louis Airport. If Carrol had taken a new reading immediately, he would have completed it between 12:24 a.m. and 12:27 a.m. The crash occurred sometime between 12:23:44 a.m. and 12:30 a.m.
7. The plaintiffs have failed to show by a preponderance of the evidence that any act or omission of the FSS personnel in reporting the weather was the proximate cause of the crash.
8. Russell Spurgeon was negligent in taking off from Kansas City and proceeding on his route to St. Louis despite two warnings that VFR flight was not recommended for that route.

ORDER
The Lombard plaintiffs filed a timely motion for reconsideration, for entry of new judgment and new findings of fact and conclusions of law, or in the alternative, for a new trial under Rule 59(a) of the Federal Rules of Civil Procedure. The Spurgeon plaintiffs have filed an identical motion under conditions the Government alleges are untimely. These were consolidated cases in which the testimony was presented at one trial and intermingled. Inasmuch as the motions are identical in scope and allegation, the Court will not dismiss the Spurgeon motion as untimely, but will rule on both motions on the merits.
The joint plaintiffs argue in detail and at length that the judgment of the Court is against the weight of the evidence. They reiterate again the opinions of the plaintiffs' expert witnesses and the inferences drawn from their testimony. But the Court found that the plaintiffs failed to show by a preponderance of the evidence that any act or omission of FSS was the proximate cause of the airplane crash.
*14 This Court is not persuaded that its findings were erroneous. Accordingly,
Plaintiffs' motions for entry of new findings, new conclusions, or in the alternative, for a new trial, are DENIED and OVERRULED.
SO ORDERED.
NOTES
[1] Because the field elevation at the Spirit of St. Louis Airport is 461 feet above mean sea level, Spurgeon's altitude of 1300 feet placed him 839 feet above the field.