107 F.3d 11
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Earl HICKERSON, Plaintiff-Appellant/Cross-Appellee,
v.
Unit Officer John KOEPP, Defendant-Appellee/Cross-Appellant.
 Nos. 95-1890, 95-1982.
 United States Court of Appeals, Sixth Circuit.
 Feb. 10, 1997.
 
 Before: MERRITT, NELSON, and DAUGHTREY, Circuit Judges.
 MERRITT, Circuit Judge.
 
 
 1
 Plaintiff Hickerson filed this civil rights action against defendant Koepp, a Michigan prison guard, under 42 U.S.C. § 1983 and the Eighth Amendment to the U.S. Constitution. The case raises mixed questions of law and fact concerning proximate cause and the "deliberate indifference" standard.
 
 
 2
 While inmates were watching a TV movie, defendant entered the TV room and changed the channel. The inmates became irate and threatened the defendant. He told the assembled crowd of prisoners that plaintiff was responsible for the channel being changed. The prisoners then redirected their outrage toward the plaintiff. A week after the television controversy, plaintiff was severely beaten and bruised by an unidentified inmate and received permanent injuries.
 
 
 3
 The District Court assigned this case to a magistrate for an evidentiary hearing pursuant to 28 U.S.C. § 636(b)(1)(B). The magistrate found that the defendant should have foreseen the likelihood of injury and, therefore, acted with deliberate indifference when he changed the channel on the prison television and blamed the act on the plaintiff. The magistrate also found that, notwithstanding defendant's conduct, plaintiff failed to establish by a preponderance of the evidence that the defendant's conduct was the proximate cause of the plaintiff's injuries. The District Court adopted the magistrate judge's report and recommendation in an order and dismissed the case. We AFFIRM the decision of the District Court with respect to the defendant's deliberate indifference. The District Court decision must be REVERSED, however, on proximate causation.
 
 Facts
 
 4
 The plaintiff Hickerson was a prisoner at the Chippewa Correctional Facility in Kincheloe, Michigan. On June 9, 1991, Hickerson was watching television in the TV room of G-Unit where he was housed. Because the program on TV did not correspond to the one scheduled by prison officials to be shown, Greg Bush, a resident unit officer, had the inmates present vote on the program they wanted to see. The inmates selected a movie. During the movie a prison headcount had to be taken; the inmates returned to their bunks. Following the count the inmates, including Hickerson, returned to the TV room and continued viewing the movie. Approximately 30 other prisoners subsequently entered the room, and the room became too noisy to hear the movie. Because Hickerson was on the TV committee, the other inmates asked him to raise the television volume. The television channels and volume could not be changed without a remote control, which was kept by the resident unit officers.
 
 
 5
 Hickerson went into the office of the defendant, unit officer John Koepp and asked for the remote control. Koepp told Hickerson that he would increase the television volume himself. A short time later, Koepp went into the TV room and changed the channel from the movie to a Nickelodeon program featuring Big Bird, instead of changing the television's volume. The inmates became irate, but Koepp refused to change the channel back to the movie.
 
 
 6
 In an attempt to calm the other inmates, Hickerson suggested they file grievances. He went to the front desk area of G-Unit to get some grievance forms and found 15-20 inmates surrounding Koepp, yelling obscenities and threatening him. Hickerson maintains that as the crowd closed in on Koepp, Koepp pointed at Hickerson and told the crowd it was Hickerson's fault that the channel had been changed. Koepp maintained that he changed the channel because the movie was not on the television schedule. He further maintained that if Hickerson had not asked him to go into the TV room, he would not have known the television was on the wrong channel.
 
 
 7
 After Koepp's statement, the inmates turned on Hickerson. Hickerson was threatened continually for a week. On June 16, 1991, Hickerson was assaulted while using the restroom. As Hickerson sat on the stool reading, an unidentified assailant struck him over the head twice. Hickerson tried to stand up after the first blow but was struck again and temporarily lost consciousness. His injuries required stitches and subsequent medical treatment and physical therapy.
 
 
 8
 This case was assigned originally to a magistrate judge who concluded that this action should be dismissed because the facts did not give rise to a deliberate indifference finding on the part of the defendant. The District Court rejected the magistrate's report and recommendation and returned the case to the magistrate for an evidentiary hearing pursuant to 28 U.S.C. § 636(b)(1)(B).
 
 
 9
 Upon hearing the evidence, the magistrate concluded that the defendant had been deliberately indifferent in refusing to take measures to protect plaintiff and in blaming plaintiff for the television controversy. Nevertheless, the magistrate found that the plaintiff failed to prove that it was the hostility arising from the television controversy that caused the unknown inmate to assault him. The District Court agreed with the findings of the magistrate judge. In an order adopting the report and recommendation of the magistrate judge, the District Court dismissed the case.
 
 Application of Law to Facts
 
 10
 "[T]he legal standard applicable to determining whether a violation of the Eighth Amendment occurred in the context of an assault upon an inmate is whether the defendant['s] conduct amounted to a 'deliberate indifference' to a risk of injury to [the] plaintiff." Doe v. Sullivan County, Tennessee, 956 F.2d 545, 550 (6th Cir.1992) (quoting Roland v. Johnson, 856 F.2d 764, 769 (6th Cir.1988). In Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 911 (1994), the Supreme Court recently explained that the standard for compensable deliberate indifference in the prison context requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he also must draw the inference." Farmer v. Brennan, 114 S.Ct. at 1979 (1994). The Court further stated that "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Id. at 1981.
 
 
 11
 The record in this case contains abundant evidence from which a factfinder could conclude that Koepp knew of a substantial risk of harm to Hickerson and was deliberately indifferent to that harm. "The risk was obvious," to use the Supreme Court's phraseology. Koepp acknowledged during cross-examination that singling out an inmate as the culprit and cause of inmates' anger could result in that inmate being assaulted by the others. Officer Greg Bush, who was present during the television controversy, described the inmates' mood as being so "bad" and "threatening" that he himself felt at risk. He also stated that when Koepp pointed at Hickerson and blamed the television controversy on him, the inmates directed "hot looks" at Hickerson. As the inmates yelled obscenities and threatened Hickerson, Koepp and Bush went into an office and closed the door, leaving Hickerson to fend for himself against the angry inmates. Therefore, we agree with the court below that the defendant acted with deliberate indifference to the safety of plaintiff.
 
 
 12
 The District Court held, we believe erroneously, that Hickerson "failed to establish by a preponderance of the evidence that Koepp's conduct was the proximate cause of the assault upon him ..., where the assault occurred seven days later." J.A. at 43-44. The plaintiff must establish that the defendant's constitutional violation was the proximate cause of his injury. Cameron v. City of Pontiac, Mich., 813 F.2d 782, 786 (6th Cir.1987). An injury is proximately caused by an act when it appears from the evidence in the case that the defendant's conduct was a substantial factor in bringing about the plaintiff's harm, and no rule of law relieves the defendant from liability because of the manner in which his conduct resulted in the harm. RESTATEMENT (SECOND) OF TORTS § 431 (1965). The burden of establishing proximate cause lies with the plaintiff, who must prove by a preponderance of the evidence that the defendant's conduct caused his harm. Glaser v. Thompson Medical Company, Inc., 32 F.3d 969, 971 (6th Cir.1994).
 
 
 13
 Based on five facts cited by the District Court, Koepp argues on appeal that Hickerson fails to meet his burden of proof in establishing proximate cause. More specifically, Koepp argues his conduct could not have been the proximate cause of Hickerson's injuries because 1) his action and Hickerson's injury were separated by seven days; 2) Hickerson's troubled prison history several years earlier suggests other reasons inmates might want to assault him; 3) Hickerson's failure to ask for protective custody after the television controversy suggests he was not in fear of any real danger; 4) there is some doubt as to how many inmates actually believed Hickerson was responsible for the television controversy; and 5) a departmental investigation into the assault upon Hickerson did not yield an assailant or a motive.
 
 
 14
 Although these items suggest a possibility of other causes, they are not persuasive. Two of the facts cited are contradictory. Defendant initially suggests that his conduct and the assault upon Hickerson are too remote because they are separated by one week. He then turns right around and suggests that incidents from Hickerson's past, which occurred several years before the assault upon Hickerson, might have caused other inmates to assault him. Defendant asserts that Hickerson's failure to ask for protective custody after the TV room incident suggests he was not afraid of being injured. But this reason is disingenuous. Hickerson was so afraid of being injured that he made an oral request for a transfer rather than ask for protective custody. Explaining his decision to ask for a transfer, Hickerson stated that there was no place in the prison system he could be protected from another prisoner who wanted to get him.
 
 
 15
 Moreover, the exact number of inmates who actually believed Hickerson was responsible for the television controversy is not particularly relevant. All agree that once the defendant shifted the blame for the television controversy to the plaintiff, the inmates threatened plaintiff. Sergeant Thompson, a supervisor on the scene at the time of Hickerson's injury, interviewed an inmate shortly after the assault. He quoted the inmate as saying that Hickerson "was receiving a lot of problems with the other prisoners with regard to a TV program incident."
 
 
 16
 Finally, the presence of other possible causes for Hickerson's injuries does not bar him from recovering from the defendant if Koepp's conduct is the most likely cause. An action need not be the sole cause of an injury to be the proximate cause Federal Deposit Insurance Co. v. Bierman, 2 F.3d 1424 (7th Cir.1993), for there can be more than one proximate cause of an injury. It is enough that the act complained of was a substantial factor in bringing about the plaintiff's injury and was at least one of the causes without which the injury would not have occurred. Thus, to show proximate cause the plaintiff needs to establish that the wrongful act was a substantial factor in producing his injury.
 
 
 17
 During the period prior to the TV incident, Hickerson did not have any major problems with other inmates. Unit Officer Bush testified that he did not recall Hickerson having any problems in the unit. Immediately after Koepp blamed the television controversy on Hickerson, however, inmates began to harass and threaten him. One week after the TV room incident, Hickerson was assaulted while using the restroom. Koepp's conduct is the only reasonable explanation for the beating. No other specific cause is given, and no other motive seems plausible.
 
 Conclusion
 
 18
 The review of the record in this case establishes that Koepp acted with deliberate indifference toward Hickerson, as found by the District Court and that Koepp's conduct was the proximate cause of Hickerson's injuries. Accordingly, the District Court's dismissal of the plaintiff's 42 U.S.C. § 1983 civil rights claim is REVERSED, and the case is REMANDED for further proceedings consistent with this opinion.
 
 
 19
 DAVID A. NELSON, Circuit Judge, dissenting.
 
 
 20
 Although there are academics who would have it otherwise, "[p]roximate causation, or the lack of it, is generally a question of fact...." Toth v. Yoder Co., 749 F.2d 1190, 1197 (6th Cir.1984). Cf. Pierce v. United States, 718 F.2d 825, 829 (6th Cir.1983) ("Unless the evidence is such that a reasonable person could reach only one conclusion, proximate cause is a question of fact"). I see nothing to the contrary in Turpin v. Merrill Dow Phar., Inc., 959 F.2d 1349 (1992).
 
 
 21
 Except where the evidence is such that a reasonable person could reach only one conclusion, deliberate indifference, or the lack of it, is likewise a question of fact. See DeGidio v. Pung, 920 F.2d 525, 533 (8th Cir.1990).
 
 
 22
 In the case at bar, the district court's findings of fact on the issues of deliberate indifference and proximate cause were made after a full evidentiary hearing. I take it that our review of these findings must be conducted under a "clearly erroneous" standard. See Howard v. Grinage, 6 F.3d 410, 413 (6th Cir.1993).
 
 
 23
 A factual finding is clearly erroneous when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." Bose Corp. v. Consumers Union of United States, Inc., 466 U.S. 485, 499 (1984), quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948). Where two views of the evidence are permissible, "the factfinder's choice between them cannot be clearly erroneous." Anderson v. City of Bessemer City, 470 U.S. 564, 574 (1985).
 
 
 24
 Had I been the factfinder in the case at bar, I am not certain that I should have found the defendant guilty of "deliberate indifference" to the plaintiff's safety. I was not the factfinder, however, and I cannot say that the magistrate's view of the evidence on this point was impermissible.
 
 
 25
 As to the question of proximate cause, my own guess would be that the unknown assailant who attacked the plaintiff probably did so because of the plaintiff's perceived role in the television controversy. Again, however, I was not the factfinder--and although the magistrate's resolution of the proximate cause question may have come closer to being clearly erroneous than did his resolution of the deliberate indifference question, I am not persuaded that his view of the evidence on the causation question was impermissible either.
 
 
 26
 The assault did not occur until seven days after the television incident, and even in prison, I suppose, there must be some tendency for tempers to cool over time. Be that as it may, the plaintiff seems to have been a person likely to have had enemies in the prison system for reasons unrelated to anything he did or did not do in connection with the television broadcast. Between 1983 and 1989, for example, he was convicted of drug possession in prison; he was transferred due to allegations that he had put out a contract on a certain inmate; and he was transferred again due to a fight with another inmate. In June of 1991, a month after he had been returned to prison because of a parole violation, he was assaulted for reasons having nothing to do with television, as far as we know. During the same time frame he had a dispute with a fellow inmate over a game of pool, after which the other inmate emptied an ashtray under his pillow.
 
 
 27
 The plaintiff's failure to request protective custody after the television incident may cast some doubt on his claim that he was threatened repeatedly as a result of the incident. Although he made an oral request for a transfer, he did not ask to be placed in protective custody--a placement that would have kept him outside the general prison population until he could be transferred.
 
 
 28
 The record as a whole does not leave me with a definite and firm conviction that the magistrate erred in deciding either of the central questions of fact presented in this case. Accordingly, I would affirm the judgment entered by the district court.